FILED
2024 Oct-07  AM 10:09
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **HENRI N. BEAULIEU, JR.,** | * | |
| | * | |
| **Plaintiff,** | * | |
| | * | |
| **v.** | * | **CASE NO.: 2:24-cv-** |
| | * | |
| **SHELBY COUNTY, ALABAMA;** | * | |
| **SHELBY COUNTY COMMISSION;** | * | |
| **KEVIN MORRIS; TOMMY EDWARDS;** | * | |
| **JON PARKER; WARD WILLIAMS;** | * | |
| **ELWYN BEARDEN; JEFF BRUMLOW;** | * | |
| **LINDSEY ALLISON; RICK SHEP-** | * | |
| **HERD; ROBBIE HAYES; CHAD** | * | |
| **SCROGGINS; TERRY FRANKLIN;** | * | |
| **J. BENTLEY OWENS, III; FRANK C.** | * | |
| **ELLIS, JR.; ROBERT SCOTT GRANT;** | * | |
| **SHELBY COUNTY AVIATION** | * | |
| **ASSOCIATION, INC.; GREG FLOYD;** | * | |
| **BIRMINGHAM FLIGHT CENTER** | * | |
| **LIMITED LIABILITY COMPANY;** | * | |
| **BARRY FRANKS; OVER THE** | * | |
| **MOUNTAIN AVIATION, LLC;** | * | |
| **SLIPSTREAM AVIATION, LLC;** | * | |
| **CHARLES WELDEN; WATERWINGS** | * | |
| **SEAPLANES, LLC; CPC2 AVIATION,** | * | |
| **LLC; CHARLES EDWARD POSKEY;** | * | |
| **and AMERICAN DRILLING OF** | * | |
| **ALABAMA, INC.,** | * | |
| | * | |
| **Defendants.** | * | |

## COMPLAINT

COMES NOW the Plaintiff, Henri N. Beaulieu, Jr., by and through his undersigned

counsel in  the above-styled cause, and shows unto the Court as follows:

## Preliminary Statement

Plaintiff, Henri Beaulieu, Jr. ("Mr. Beaulieu"), seeks to hold Shelby County, Alabama, its officials, legal counsel, and associated individuals and entities accountable for orchestrating a coordinated campaign to silence his protected free speech and petitioning rights. As a concerned citizen and whistleblower, Mr. Beaulieu raised valid concerns about escalating noise and misconduct at the Shelby County Airport. In retaliation, he was subjected to a series of aggressive actions aimed at suppressing his constitutional rights.

Defendants, acting under color of state law, silenced Mr. Beaulieu through a coercive cease-and-desist letter, falsely promising he would not face legal action if he complied. Despite Mr. Beaulieu ceasing all communications under duress, the County, in concert with Airport-related entities, passed a resolution authorizing a retaliatory lawsuit and filed it based on false allegations. This lawsuit, coupled with baseless accusations to federal and state authorities portraying Mr. Beaulieu's legitimate whistleblowing as a safety threat or criminal harassment, and other targeted actions - including deliberate plane flyovers, engine revving, and repetitive touch-and-go maneuvers - formed part of a sweeping effort to silence Mr. Beaulieu, obstruct justice, and conceal misconduct.

Mr. Beaulieu seeks declaratory, injunctive, and legal relief under 42 U.S.C. § 1983 for the ongoing violation of, and conspiracy to violate, his First Amendment rights to free speech and to petition the government. This complaint details the Defendants' coordinated actions to suppress Mr. Beaulieu's speech about Airport operations, causing significant harm and obstructing his efforts to expose misconduct related to the Airport. Mr. Beaulieu seeks declaratory and injunctive relief, as well as damages and any other appropriate remedies to protect his rights and prevent further retaliation.

**<u>Parties</u>**

1. Plaintiff, **Henri N. Beaulieu, Jr.**, is an individual over the age of nineteen (19) years and a resident of Shelby County, Alabama.

2. Defendant, **Shelby County, Alabama**, is a political subdivision of the State of Alabama and owns and operates the Shelby County Airport ("Airport"), and the Defendant, **Shelby County Commission**, is the governing body responsible for managing Shelby County operations, including the Airport.

3. Defendants, **Kevin Morris (District 1), Tommy Edwards (District 2)** (the Airport's district**), Jon Parker (District 3), Ward Williams (District 4), Elwyn Bearden (District 5), Jeff Brumlow (District 6)** (and a licensed Alabama attorney), **Lindsey Allison (District 7)** (and a licensed Alabama attorney), **Rick Shepherd (District 8), and Robbie Hayes (District 9)**, are over the age of nineteen (19) years, are residents of Shelby County, Alabama, and are the nine (9) nine members of the Shelby County Commission (collectively, the "Individual Commissioners"), and are sued in both their individual and official capacities.

4. Defendant, **Chad Scroggins**, is an individual over the age of nineteen (19) years and a resident of Shelby County, Alabama. He is the County Manager of Shelby County and the Manager of the Shelby County Airport, and is sued in both his individual and official capacities.

5. Defendant, **Terry Franklin**, is an individual over the age of nineteen (19) years and a resident of Shelby County, Alabama. He is the Manager and/or Aviation Supervisor of the Shelby County Airport, and is sued in both his individual and official capacities.

6. Defendants, **J. Bentley Owens and Frank C. Ellis, Jr.**, are individuals over the age of nineteen and are believed to be residents of Shelby County, Alabama. Both are licensed

Alabama attorneys and serve as legal counsel for Shelby County. They are sued in both their individual and official capacities and are sometimes referred to collectively as the County's "legal counsel."

[Defendants, Shelby County, the Shelby County Commission, the Individual Commissioners, the County's legal counsel, Chad Scroggins and Terry Franklin are sometimes referred to collectively herein as "the County."]

7.  Defendant, **Robert Scott Grant**, is an individual over the age of nineteen (19) years and a resident of Shelby County, Alabama. He is a pilot, is a flight instructor with Birmingham Flight Center, LLC (BFC), and co-owner of a plane hangared at the Airport. Additionally, he serves as the President of the **Shelby County Aviation Association, Inc. (SCAA)**, a domestic non-profit corporation based at the Airport that advocates for pilots and the aviation community. He is sued individually and in his role as President of the SCAA for actions taken under color of state law and in concert with state actors, including Shelby County officials and the County's legal counsel. The SCAA is also sued for actions taken under color of state law in concert with state actors.

8.  Defendant, **Greg Floyd**, is an individual over the age of nineteen (19) years and a resident of Jefferson County, Alabama. He is the Director of Operations and a flight instructor at Birmingham Flight Center, LLC (BFC). He is sued individually and for actions taken under color of state law and in concert with state actors.

9.  Defendant, **Birmingham Flight Center, Limited Liability Company (BFC)**, is a domestic limited liability company, principally located in Jefferson County, Alabama. BFC is a flight training business that has used the Airport for flight training activities and is sued for

actions taken under color of state law in concert with state actors.

10.  Defendant, **Barry Franks**, is an individual over the age of nineteen and a resident of Shelby County, Alabama. He owns and operates Over the Mountain Aviation, a flight training business based at the Airport. Franks is also the incorporator and/or registered agent of Over the Mountain Aviation, LLC, and Slipstream Aviation, LLC. He is sued both individually and for actions taken under color of state law and in concert with state actors.

11.  Defendants, **Over the Mountain Aviation, LLC** ("OTM") and **Slipstream Aviation, LLC** ("Slipstream"), are domestic limited liability companies doing business in Shelby County. OTM conducts flight training operations at the Airport using a fleet of aircraft, including planes registered to Slipstream. They are sued for actions taken under color of state law and in concert with state actors.

12.  Defendant, **Charles Welden**, is an individual over the age of nineteen and a resident of Jefferson County, Alabama. He owns WaterWings Seaplanes, a flight training business based at the Airport, where he also serves as a flight instructor. Welden is the incorporator and/or registered agent of WaterWings Seaplanes, LLC, and CPC2 Aviation, LLC. He is sued both individually and for actions taken under color of state law and in concert with state actors.

13.  Defendants, **WaterWings Seaplanes, LLC** ("WaterWings") and **CPC2 Aviation, LLC** ("CPC2"), are domestic limited liability companies doing business in Shelby County. WaterWings conducts flight training operations at the Airport using a fleet of aircraft, including a plane registered to CPC2. They are sued for actions taken under color of state law and in concert with state actors.

14.  Defendant, **Charles Edward Poskey**, is an individual over the age of nineteen (19)

years and a resident of Shelby County, Alabama. He is a pilot and incorporator of **American Drilling of Alabama, Inc.** (American Drilling), a domestic corporation that owns planes and rents a hangar at the Airport. This hangar is also used for SCAA meetings and activities. Poskey and American Drilling are sued for actions taken under color of state law and in concert with state actors.

### Jurisdiction and Venue

15.  This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, as the claims arise under the Constitution and laws of the United States, particularly 42 U.S.C. § 1983. This Court also has jurisdiction under 28 U.S.C. § 1343(a)(3), as this is an action to redress the deprivation of rights secured by the Constitution and laws of the United States. The Court has authority to issue declaratory and injunctive relief pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202. This Court also has authority to award costs and attorneys' fees pursuant to 42 U.S.C. § 1988.

16.  Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this judicial district, and the Defendants are subject to the Court's personal jurisdiction within this district.

### Non-Joinder/Reservation of Rights

17.  Mr. Beaulieu's wife and undersigned counsel, Donna Beaulieu, is not a necessary or indispensable party under Rule 19 of the Federal Rules of Civil Procedure for the purposes of the claims asserted in this complaint. Complete relief can be granted to Plaintiff, Henri Beaulieu, for the violations of his rights under federal law without the joinder of the undersigned counsel as a party. The interests of undersigned counsel are aligned with and adequately represented by Mr.

Beaulieu in these claims. Adjudicating the claims in this matter between Mr. Beaulieu and the

Defendants does not risk creating inconsistent obligations for the Defendants, nor does it

prejudice any separate state law remedies or claims that may be available to either Mr. Beaulieu

or undersigned counsel. Mr. Beaulieu and the undersigned counsel expressly reserve the right to

pursue any and all available state law remedies separately.

### Statement of the Facts

18.  Plaintiff, Henri Beaulieu, resides in Shelby County, Alabama, near the Shelby

County Airport ("Airport"), which is owned and operated by Shelby County, Alabama. In

November 2023, Mr. Beaulieu began experiencing significant noise disruptions due to an

increase in flight operations and flight training activities at the Airport. These disruptions have

negatively impacted his enjoyment of his property, daily life, and well-being, as well as the local

community.

19.  Mr. Beaulieu began investigating and raising concerns with Shelby County, including

the County Manager, the County's legal counsel, and the Airport's tenants and users, about the

disruptive noise caused by Airport operations. Although the County had previously represented

that it would not expand the Airport - seemingly confirmed by the sale of land to the north and

south that precluded physical expansion - it allowed unchecked internal growth. This included

the improper use of federal funds to build additional hangars and accommodate an increasing

number of planes, primarily benefitting Airport associates, including flight training operations.

20.  While investigating the escalating noise from planes flying over and near his property

southwest of the Airport, Mr. Beaulieu uncovered multiple issues with the County's management

of the Airport, including violations of federal mandates, state laws, ethics rules, missing Airport

revenue reports, and lease violations that directly contributed to the noise. Exercising his First

Amendment rights to free speech and to petition the government, he communicated these

findings, along with notifications and evidence of plane misconduct, to County officials via

email.

21.  During this time, Mr. Beaulieu also submitted public records (FOIA) requests to the

County, but in response to one of his requests, the County charged an excessive fee to produce

the requested records, violating their own public records request policies. Mr. Beaulieu asked

them to adjust the fee in accordance with their rules, but the County did not respond. As a matter

of principle, Mr. Beaulieu refused to pay the excessive fee.

22.  Mr. Beaulieu and his counsel reached out to the community via social media to

address the growing noise disturbances caused by plane operations associated with the Airport.

Mr. Beaulieu observed that Over the Mountain Aviation's (OTM) attorney inadvertently revealed

OTM's awareness of the public discussion by responding to a Facebook post where the

undersigned counsel sought contact information for Homeowners' Associations affected by the

noise. The undersigned counsel also received multiple negative reviews on Google, with

comments like "Pilots Rule," which were later removed by Google upon notification. One

individual who left a negative review, when contacted, displayed knowledge of OTM's owner,

Barry Franks, saying"I don't even know who the owner of the flight school is, but it's not hard to

figure out," suggesting early retaliatory conduct tied to Airport interests as of November 28,

2024. The County was informed of these retaliatory actions toward the undersigned counsel.

23.  When Mr. Beaulieu raised concerns about Airport noise with the County and Airport

Manager, Defendant Chad Scroggins ("Scroggins"), Scroggins dismissed his concerns, claiming

that there had been no changes at the Airport. Knowing this was incorrect, Mr. Beaulieu sent emails to other County officials, including the Individual Commissioners and the County's legal counsel, Frank C. "Butch" Ellis and J. Bentley Owens, detailing the ongoing noise disturbances and the misconduct related to Airport operations that he uncovered during his investigation.

24.   On December 21, 2023, Mr. Beaulieu received an email from Scroggins informing him that only Scroggins or the County's legal counsel would "receive and/or respond" to Mr. Beaulieu's information requests, thereby restricting Mr. Beaulieu's communications with County officials. Moreover, none of the Individual Commissioners ever responded to a single email, indicating Mr. Beaulieu's emails were blocked or ignored based on their content. Scroggins and the County's legal counsel also failed to provide any meaningful response to his emails concerning the Airport issues he presented.

25.   On December 22, 2023, Mr. Beaulieu, through counsel, submitted a Notice of Claim to the County as required under Alabama law, outlining concerns and intended litigation concerning the noise and misconduct at the Shelby County Airport. The notice indicated potential federal claims, including a property taking claim under the Fifth Amendment, alongside state law claims. Despite being fully aware of Mr. Beaulieu's intent to pursue legal action and his multiple notifications documenting escalating plane noise, retaliatory conduct, and various violations (laws, FAA grants, leases, ethics) by the County, the County took no action and allowed the 90-day statutory period to expire without responding or addressing the issues raised in the notice of claim.

26.   Since raising the Airport noise issues in November 2023, Mr. Beaulieu (and his counsel) have observed a pattern of retaliatory actions by pilots associated with the Airport.

These actions include planes from Over the Mountain flight school flying over and near the Beaulieu property with radar transmitters turned off to avoid detection, as well as flyovers directly over Mr. Beaulieu's home, planes veering toward his property, buzzing his property, and deliberate engine revving. Some of this activity has a direct correlation with his noise complaints and key litigation events. The timing and nature of these flights indicate a coordinated effort to harass and intimidate Mr. Beaulieu in response to his exercise of his rights to voice concerns and pursue legal action.

27. Over the Mountain Aviation, LLC ("OTM"), owned and operated by Barry Franks ("Franks"), is a flight school based at the Airport. OTM operates a fleet of aircraft registered in the name of OTM and a related entity, Slipstream Aviation, LLC ("Slipstream"), engaging in flight training activities seven days a week, at all hours. OTM operates multiple planes for flight training, including planes Since Mr. Beaulieu began raising concerns, OTM intensified its operations, adding more aircraft to its fleet and deliberately flying near and over Mr. Beaulieu's property. These flights, which include turning off ADS-B transmitters and flying at angles to conceal tail numbers, have created significant noise disturbances and emotional distress, including sleep disruptions. Despite Mr. Beaulieu's complaints to both OTM and the County, these aggressive, retaliatory operations continue unchecked, indicating an ongoing effort to discourage his pursuit of redress.

28. WaterWings Seaplanes, LLC ("WaterWings"), is another flight school based at the Airport and is owned and operated by Charles Welden ("Welden") as "WaterWings Seaplanes." WaterWings has a fleet of aircraft that includes not only seaplanes, but a helicopter, and other aircraft, including a multi-engine aircraft registered under CPC2 Aviation, LLC ("CPC2"). While

some of WaterWings' planes have caused noise disturbances, the CPC2 plane, N730MC, has repeatedly flown directly over or near Mr. Beaulieu's home, causing noise so intense that it has shaken the windows and has startled Mr. Beaulieu and his family. Notification concerning the recurrent and retaliatory noise from this plane and other WaterWings aircraft has been communicated to WaterWings and CPC2, as well as to the County and the County's legal counsel.

29.  Despite multiple notifications from Mr. Beaulieu and his counsel to the County about the deliberate and often alarming disturbances caused by flight school tenants and other planes flying over and near his family's property, the County, including on-site Airport Manager Terry Franklin ("Franklin"), took no action to stop this conduct. These disturbances continue, and Mr. Beaulieu fears they will escalate with the filing of this lawsuit. An FAA-employed attorney has confirmed to Mr. Beaulieu's counsel that such actions are a known strategy among pilots to retaliate against individuals who raise noise concerns, affecting not only Mr. Beaulieu but the surrounding community as well.

30.  Robert Scott Grant ("Grant"), an Airport tenant, plane owner, flight instructor with Birmingham Flight Center, and President of the Shelby County Aviation Association ("SCAA"), has taken numerous actions to harm Mr. Beaulieu and his family. On March 2, 2024, after Mr. Beaulieu emailed Franks about noise from OTM planes, he was subjected to retaliatory conduct by an OTM plane and a plane owned by Grant and his wife (N130DG). This included a loud flyover of Mr. Beaulieu's property, followed by a hard turn and engine acceleration overhead. Mr. Beaulieu then emailed Mrs. Grant with an image from public radar tracking (ADS-B) of the flyover, advising her of potential litigation due to the deliberate noise disturbance. The

undersigned counsel also called Mrs. Grant, who responded, "we know all about it," before abruptly hanging up. Mr. Beaulieu notified the County, including Franklin, Scroggins, and various Individual Commissioners, via email about this incident and the ongoing harassing plane conduct but received no response.

31.  Mr. Beaulieu has also discovered that, over time, Grant engaged in other acts of intimidation against him. Public records received in August 2024 from Shelby County, revealed that on March 5, 2024, Grant sent an email to the Federal Aviation Administration ("FAA") which included a copy of an email he had sent to the Transportation Safety Administration ("TSA"), falsely reporting Mr. Beaulieu as a "Security Issue." In his email,  Grant claimed that he "knows" the district FAA office is "getting several complaints" about the "harassment situations" by Mr. Beaulieu and the undersigned counsel, indicating that Grant was colluding with others. He deliberately depicted Mr. Beaulieu, his 82-year-old mother, and the undersigned counsel as threats to flying safety and the Shelby County Airport (see Attachment "1").

32.  Grant went so far in his TSA email, as to make sure he used key words to trigger a TSA response, including the terms "alarm" and "great alarm," "explosive," "irrational" (two times), "safety" (two times),  and "compromised." These inflammatory terms were meant to trigger a TSA flag and frame the Beaulieu family as a terroristic threat, and provoke a federal security investigation and to intimidate Mr. Beaulieu into abandoning his free speech activities and litigation concerning the Airport. By doing so, Grant sought to obstruct Mr. Beaulieu's right to petition the government and to defend himself against false criminal accusations. This has caused Mr. Beaulieu great alarm, compounding his fear of false arrest, especially as he had already been accused of stalking and sued for harassment by the County. Notably, Grant has

never met or spoken directly with Mr. Beaulieu.

33. Additionally troubling is that the County had possession of Mr. Grant's March 5th, 2024, FAA/TSA email and knew that Mr. Grant's allegations were egregiously false, yet the County stayed silent. The County would  clearly benefit from Grant's actions if Mr. Beaulieu was under investigation, and, as detailed below, Grant was "supporting and participating [in concert] with" the County's legal team.

34. On March 11, 2024, the County Commission had a scheduled meeting at which all of the Individual Commissioners were present. Grant attended this meeting and signed-in as "Scott Grant" on the 'Public Comment' sheet on the 'subject' of the Shelby County Aviation Association.  According to the Minutes of the meeting - which do not reflect any open or public discussion concerning the Airport, Mr. Beaulieu, or any comment from Grant - the Commission "waived the rules" at the end of the meeting to discuss an item not listed on the agenda and unanimously approved entering an executive session to "discuss pending General Reputation and Character."

35. Following the executive session, the Commission/the Individual Commissioners, acting both individually and in their official capacities, along with the County's legal counsel, County Manager Chad Scroggins, Airport Manager Terry Franklin,  Robert Scott Grant, individually and on behalf of the SCAA, and others, communicated and coordinated together, under color of state law, engaging in acts to silence Mr. Beaulieu, issued a cease-and-desist letter to Mr. Beaulieu, passed a resolution, and filed a SLAPP-type lawsuit against him.

36. On March 14, 2024, the Shelby County Aviation Association (SCAA) held a movie event in a hangar on Airport property leased by the County to American Drilling of Alabama,

Inc., a business owned by Charles Edward Poskey ("Poskey"). Concerned that this event could incite further retaliation and harm against him and his family, Mr. Beaulieu notified the County (as did his counsel) about the event, pointing out that it violated the County's Airport lease, which only permitted aircraft storage in the hangars. Mr. Beaulieu and his counsel drove to the Airport and observed from their vehicle in a public parking lot, that the event was being held at the hangar as planned. While leaving in their vehicle, Poskey came out of the hangar and flagged them down. Mr. Beaulieu stopped to talk with him.

37. During the conversation, Poskey was agitated, cussing and jumping around. Mr. Beaulieu remained calm and in his vehicle. Poskey stated that Mr. Beaulieu's picture had been circulated among pilots and that the pilots were "agitated" by Mr. Beaulieu's actions regarding the Airport. Poskey stated he would call County Attorney Ellis the next day to "stop this s**t" and "get a cease-and-desist." This indicates his participation in a coordinated plan with the County to silence Mr. Beaulieu. The undersigned counsel later asked the County's legal counsel if he represented Poskey and received no response.

38. Poskey continues to host SCAA meetings in his company's American Drilling hangar on County Airport property. These activities persist despite the County's knowledge of the ongoing harm to Mr. Beaulieu and the improper use of public facilities as a forum for collusion and retaliation. By facilitating these events, both Poskey and American Drilling contribute to the silencing efforts against Mr. Beaulieu, using the County's property to further the campaign of intimidation and retaliation.

39. On March 14, 2024, Mr. Beaulieu observed a plane from Birmingham Flight Center (BFC), where Grant is employed as a part-time flight instructor, arriving at the congested Shelby

County Airport for flight training. He noted that other nearby airports had no plane traffic. In response, Mr. Beaulieu sent BFC an email about the noise issue. According to public records provided by the County, the next day (March 15, 2024), BFC's Director of Operations, Greg Floyd ("Floyd"), forwarded the email to Grant with the message, "Another contact after we've asked them to stop contacting us." This statement was false. Grant then emailed a response to Floyd, stating, "OK - harassing communications - a warrant could now be in order" (see Attachment "2")

40.  Grant then copied the email string to two (2) FAA officials, one of the owners of BFC, and an attorney for another flight school. Grant subsequently forwarded the email string to Shelby County Airport Manager, Terry Franklin, stating, "Here's a crossed line," referring to Mr. Beaulieu's initial email to BFC. Again, the County, including Franklin the Airport Manager, had this information and was silent as to the false allegations against Mr. Beaulieu. Mr. Beaulieu continued to communicate about plane noise and Airport-related misconduct issues to the County.

41.  Following the March 11, 2024, executive session, the encounter with Poskey, and the BFC email string, a cease-and-desist letter was issued on March 18, 2024, to Mr. Beaulieu, signed by County legal counsel, J. Bentley Owens, III ("Owens"). The letter demanded that Mr. Beaulieu "cease and desist further communications with all commissioners, county officials and...operators and tenants of the airport." It directed that Mr. Beaulieu's communications be conducted through counsel and warned that his "failure to comply" would "necessitate intervention of the court" (see Attachment "3"). The cease-and-desist letter also indicated that if Mr. Beaulieu complied with the County's demands for silence, no further action would be taken.

42. Mr. Beaulieu received the County's cease-and-desist letter via regular U.S. Mail (from Columbiana to Calera) on March 21, 2024. Immediately after receiving the letter, and fearing baseless civil and criminal consequences, including the possibility of wrongful arrest at any moment, Mr. Beaulieu complied with the letter and ceased all communications, albeit under duress. He tried to call Owens as directed to confirm receipt and left a message with his office, but his call was not returned. That afternoon, Mr. Beaulieu cut off all forms of contact with anyone connected to the Airport or County, including email, phone calls, letters, and social media, out of fear of further retaliation. This silence extended to communications with the public and other residents facing similar noise issues, effectively silencing his efforts to help others. On March 22, 2024, the day after Mr. Beaulieu received the cease-and-desist letter, Poskey's plane, N63895, was flown directly over Beaulieu's home.

43. Despite Mr. Beaulieu's compliance with the cease-and-desist letter on March 21, 2024, the County Commission, at its next meeting on March 25, 2024, the five members present - Individual Commissioners Hayes, Morris, Parker, Williams, and Bearden - approved the minutes from the March 11th meeting and unanimously passed Resolution No. 2024-03-25-09. Although Individual Commissioners Allison, Brumlow, Shepherd, and Edwards were absent from the March 25th meeting, they were all aware of the Resolution and took no steps to oppose or halt the Resolution.

44. Resolution No. 2024-03-25-09 appeared pre-drafted and ready for a vote at the meeting without prior discussion in open session. The Resolution falsely claimed that Mr. Beaulieu's conduct "continues and has intensified to the point that action is now required by the Commission," despite him ceasing all communications four (4) days earlier on March 21, 2024.

The Resolution, which the Commission approved despite knowing that Mr. Beaulieu had ceased communications, authorized legal action against Mr. Beaulieu, his elderly mother, and his undersigned counsel without any legitimate cause. The County approved this Resolution, which is now publicly accessible on the County's webpage, leading viewers to believe that Mr. Beaulieu, his mother, and his wife/attorney have engaged in unlawful conduct (see Attachment "4"). This not only compounds the injury to Mr. Beaulieu's free speech and petition rights caused by the County's actions but also serves to intimidate others who might raise concerns with the County.

45.  After the 90-day period for the Notice of Claim expired, allowing Mr. Beaulieu to file his lawsuit, the County aimed to preempt his action. On April 2, 2024, twelve (12) days after Mr. Beaulieu had fully complied with the cease-and-desist letter and ceased all communications, the County filed a retaliatory SLAPP-type lawsuit against him in state court, seeking a preliminary as well as a permanent injunction to prevent him from engaging in protected speech and petition activities related to the Airport.

46.  The lawsuit directly contradicted the County's own statement in the cease-and-desist letter that compliance would preclude further legal action. County Manager Scroggins signed the complaint under penalty of perjury, falsely claiming that Mr. Beaulieu's communications were "persistent and unrelenting" and had "exponentially increased," despite knowing that Mr. Beaulieu had not communicated for nearly two weeks. The County's legal counsel, Frank ("Butch") Ellis and/or J. Bentley Owen, drafted the complaint, with Ellis signing and filing it as counsel and Owens entering his appearance as additional counsel. Neither Scroggins, Ellis, nor Owens had received any communications from Mr. Beaulieu in the twelve (12) days preceding

the lawsuit. Nevertheless, Mr. Beaulieu was served by a sheriff within hours of the filing,

underscoring the County's premeditated intent to silence him.

47.  At the next commission meeting on April 8, 2024, the same five Individual

Commissioners - Hayes, Morris, Parker, Williams, and Bearden - who passed the Resolution on

March 25, 2024, approved the minutes from that meeting with full knowledge that the Resolution

was false and that the lawsuit had been filed based on false allegations. Despite being aware of

these facts, they did nothing to rectify the situation. Although Individual Commissioners Allison,

Brumlow, Shepherd, and Edwards were either absent or abstained from approving the March

25th minutes, they also knowingly failed to act to stop or reverse the County's actions, thereby

compounding the harm.

48.  Meanwhile, plane activities out of the Airport, including deliberate and harassing

conduct aimed at the Beaulieu property, persisted and escalated following the filing of the

lawsuit against Mr. Beaulieu. Plane noise has also continued regularly, throughout the day, early

on Sunday mornings, and into the evenings, with planes being flown directly over residential

homes.

49.  The Defendants' retaliatory actions, including the cease-and-desist letter and

subsequent lawsuit, have severely impacted Mr. Beaulieu's daily life. Already silenced by their

actions, he now lives in constant fear of further retaliation, including possible arrest by county or

federal authorities. This fear has suppressed his ability to communicate or engage in public

discourse, creating a chilling effect that not only infringes upon his First Amendment speech and

petition rights but also deepens his emotional distress, affecting his overall well-being and daily

activities.

50.  On July 19, 2024, as part of his ongoing retaliation beyond Airport operations, Grant filed a complaint with the Alabama State Bar against Mr. Beaulieu's counsel, also referencing Mr. Beaulieu. Grant's complaint, filled with false accusations and misinformation, demanded the undersigned counsel's disbarment and threatened the Bar and the Courts with complicity if they failed to act. This bar complaint mirrored prior retaliatory tactics aimed at suppressing Mr. Beaulieu's lawful speech and petitioning activities. It included references to past legitimate lawsuits brought by the undersigned counsel to protect the Beaulieu family and their property, but distorted these cases using language similar to that previously found in the County's legal counsel's filings. Despite not being a lawyer, Grant's legal assertions closely paralleled the County's arguments, indicating that he was acting with input and guidance from the County and its associates.

51.  On July 25, 2024, the Shelby County Aviation Association ("SCAA"), through Grant, sent an email to its subscriber list soliciting information about any noise complaints from a "local resident," specifically targeting Mr. Beaulieu. The email assured recipients that the "SCAA is actively engaged and has been working with numerous entities on [their] behalf" against Mr. Beaulieu and included the false statement, "As you know, KEET operations are always considerate of our local residential communities." This mass email was another attempt to facilitate and encourage retaliation and intimidation by SCAA members, emboldening them under the false pretext that their actions were justified and "courteous," regardless of their actual impact. Grant aimed to provoke further retaliatory conduct, fabricate evidence against Mr. Beaulieu, and suppress his free speech and petition rights.

52.  On August 8, 2024, the undersigned counsel sent a public records request to the

Alabama Department of Transportation ("ALDOT"). On September 4, 2024, ALDOT provided public records via email, which, remarkably, included an August 26, 2024, email from Grant, sent both individually and as President of the SCAA. In this email, Grant falsely accused Mr. Beaulieu and his counsel of engaging in a "campaign" of "legal harassment" and made other baseless allegations that would take pages to fully address. He then forwarded this email to the County's legal counsel (Ellis), thereby confirming that the email had been sent and further evidencing coordination between Grant and the County (see Attachment "5")

53. Grant has also repeatedly misrepresented himself in communications with federal agencies, including the TSA, FAA, and ALDOT. In these communications, he falsely referred to himself as 'Colonel, U.S.A.F. Retired,' when, in reality, he is a retired Colonel from the Alabama Air National Guard. By presenting himself as a retired U.S. Air Force officer, Grant intentionally sought to mislead federal authorities and bolster his credibility, thereby exaggerating the seriousness of his complaints against Mr. Beaulieu and his counsel.

54. Since November, and continuing to the present, planes from other locations have used the Airport for training, despite Alabama's many other airports being clearly available or free of flight training. These planes have come from Birmingham as well as areas such as Bessemer, Montgomery, and Auburn - locations that Grant mentioned in his email to ALDOT as being affected by Mr. Beaulieu and his counsel's alleged "legal harassment."

55. On September 15, 2024, Grant emailed the TSA, FAA, and ALDOT, to "withdraw" his false reports copying the undersigned counsel after being sent a demand for retraction by the undersigned counsel pursuant to Alabama law. On October 1, 2024, he emailed the Alabama State Bar to "withdraw" his bar complaint against the undersigned counsel after being informed

by the Bar that no action would be taken, again copying the undersigned counsel. Although these withdrawals were made in his individual capacity and as President of the Shelby County Aviation Association (SCAA), he did not retract the statements as made - under the title "Colonel, U.S.A.F. Retired." His failure to retract these statements raises concerns about his continued attempt to mislead or misrepresent his authority.

56.    Due to the actions and inactions of the County, its officials, and those acting in concert with them, retaliatory flight conduct from Airport tenants and users has continued to the present. This conduct includes flights with ADS-B radar tracking turned off. As recently as Saturday, September 21, 2024, Sunday, September 22, 2024, and October 6, 2024, pilots, flight instructors, and/or students operated OTM's Slipstream plane, N5366J, with its ADS-B turned off to avoid radar tracking; OTM plane N4473X engages in the same conduct known by the Airport in addition to other Airport tenants. The plane was flown both mornings before 9:00 A.M., deliberately causing noise disturbances. This plane, as well as at least one other OTM plane, has also been operated on other occasions with the ADS-B transmitters turned off, creating similar retaliatory disturbances over or near the Beaulieu property. These flights have caused sleep disturbances and stress, with such retaliatory and intimidating actions escalating over time, involving this and other planes used by OTM. Prior to this, on September 10, 2024, pilots, flight instructors, and/or students operated WaterWings/CPC2 plane N730MC in a deliberate, retaliatory flyover of Mr. Beaulieu's home, with the bottom of the plane in clear view overhead.

57.    In addition to the named Defendants, certain unidentified individuals operating aircraft have engaged in actions contributing to the ongoing retaliatory campaign and conspiracy against Mr. Beaulieu, including flight instructors and students. Mr. Beaulieu intends to identify

these operators through discovery and reserves the right to amend the complaint to include them as defendants once their identities are confirmed.

58.  As a direct result of the retaliatory actions stemming from the Shelby County Airport's operations and the coordinated efforts of the Defendants, Mr. Beaulieu has suffered, and continues to suffer, violations of his constitutional First Amendment rights to free speech and to petition the government.

## Claims for Relief

## COUNT I

## Violation of First Amendment Rights - Free Speech/Petition (42 U.S.C. § 1983)

### Introduction

1.  The First Amendment to the U.S. Constitution protects individuals' rights to free speech and the right to petition the government for redress of grievances. Plaintiff, Henri Beaulieu ("Mr. Beaulieu"), brings this claim under 42 U.S.C. § 1983 against the named Defendants for depriving him, under color of state law, of these First Amendment rights. As a resident of Shelby County, Mr. Beaulieu began raising concerns in November 2023 about increasing noise disruptions and misconduct at the County-owned Shelby County Airport ("the Airport"), a matter of public concern. His actions in documenting issues, communicating with public officials, and exposing the County's mismanagement of the Airport are protected First Amendment activities. In retaliation for his whistleblowing, Defendants initiated a deliberate and escalating campaign to silence and suppress Mr. Beaulieu's speech and petitioning activities.

### A.    Shelby County, County Commission, and Individual Commissioners

2.  In November 2023, Mr. Beaulieu began communicating his grievances to the County

regarding noise from planes operating in and out of the County-owned and operated Airport. He was quickly told by the County Manager, Chad Scroggins, that there was no change in Airport operations, despite what Mr. Beaulieu was clearly hearing on his property and inside his home. Further investigation by Mr. Beaulieu uncovered various issues concerning the Airport, including hangar lease violations, federal grant and state law concerns, and ethical violations, s issues. None of the Individual Commissioners responded to his communications.

3.  On December 22, 2023, Mr. Beaulieu's undersigned counsel submitted a Notice of Claim on behalf of the Beaulieu family, detailing concerns and indicating intended litigation over noise and misconduct at the Airport. This notice, in compliance with Alabama law, indicated potential federal claims and provided the County with a 90-day window to address these issues.

4.  Despite the gravity of Mr. Beaulieu's concerns, the County remained silent throughout the 90-day period. Rather than addressing the issues, the County began a series of escalating retaliatory actions aimed at silencing Mr. Beaulieu's protected speech and petitioning activities.

5.  On March 11, 2024, the County Commission held a regular meeting attended by all individual commissioners: Kevin Morris, Tommy Edwards, Jon Parker, Ward Williams, Elwyn Bearden, Jeff Brumlow, Lindsey Allison, Rick Shepherd, and Robbie Hayes. According to the meeting minutes, there was no open or public discussion concerning the Airport, Mr. Beaulieu, or any comment from Grant. At the end of the meeting, the Commission "waived the rules" to discuss an item not listed on the agenda and unanimously approved entering an executive session to "discuss pending General Reputation and Character." This closed-door meeting, in violation of the Alabama Open Meetings Act, included deliberations targeting Mr. Beaulieu.

6.  During this secret meeting, the Commissioners, acting in their individual and official

capacities under color of state law, deliberated, discussed, and supported actions targeting Mr. Beaulieu, including authorizing the issuance of a cease-and-desist letter explicitly intended to silence Mr. Beaulieu's communications regarding the noise and misconduct at the Airport. The letter was designed not only to halt his communications with the County and its officials but also extended to Airport tenants and others, threatening court intervention, including potential criminal action, should he fail to comply with the County's demands. This letter was overly broad in its scope, extending beyond any legitimate concern and thereby violating Mr. Beaulieu's First Amendment rights to free speech and petition.

7.  The County's legal counsel issued the cease-and-desist letter on March 18, 2024, which Mr. Beaulieu received on March 21, 2024, via regular U.S. Mail (Attachment "3"). Under duress and despite doing nothing wrong, Mr. Beaulieu immediately ceased all communications regarding the Airport, suffering immediate and irreparable harm to his First Amendment rights. The letter's threat of legal action effectively restrained his right to free speech and to petition the government. This harm continues to this day.

8.  Notably, the letter was not served through certified mail or any method ensuring proper notice. This improper service underscores the County's bad faith and lack of genuine concern over the alleged harassment. The letter was merely a first step in the County's broader retaliatory plan to coerce Mr. Beaulieu into compliance with unconstitutional demands.

9.  Despite Mr. Beaulieu's coerced compliance with the County's demands, the County and the Individual Commissioners advanced their retaliation. On March 25, 2024, acting in their individual and official capacities, Commissioners Haynes, Williams, Morris, Parker, and Bearden unanimously passed Resolution No. 2024-03-25-09, authorizing a lawsuit against Mr. Beaulieu

(Attachment "4"). The Resolution, created without any open deliberation as required by the Alabama Open Meetings Act, marked a formal decision to retaliate against Mr. Beaulieu. The remaining Commissioners - Allison, Brumlow, Shepherd, and Edwards - were aware of the Resolution but did nothing to oppose or prevent it. Allison and Brumlow, as attorneys, had a heightened duty to uphold constitutional rights but failed, thereby showing their complicity in the suppression of Mr. Beaulieu's First Amendment rights.

10.  The Resolution also targeted Mr. Beaulieu's counsel and his 82-year-old mother for potential legal action. By attacking his counsel, the County aimed to interfere with and intimidate Mr. Beaulieu's legal representation and undermine the legitimacy of his grievances. This effort was intended to create a climate of fear around Mr. Beaulieu's advocacy on matters of public concern, directly infringing upon his First Amendment right to petition the government.

11.  On April 2, 2024, nearly two weeks after Mr. Beaulieu ceased all communications in compliance with the cease-and-desist letter, the County filed a retaliatory lawsuit against him. Within hours, Mr. Beaulieu was served via sheriff's deputy. This lawsuit was a clear effort to suppress his speech and petitioning rights and served no legitimate concern of harassment.

12.  The actions of the County, the Commission, and the Individual Commissioners, taken in both their individual and official capacities - including the secret deliberations, the cease-and-desist letter, the Resolution, and the SLAPP-type lawsuit - were part of a coordinated response to Mr. Beaulieu's whistleblowing. These measures, taken under color of state law, were intended to intimidate and suppress his First Amendment rights through legal threats and retaliation.

13.  In his whistleblowing efforts before being silenced by the cease-and-desist letter, Mr.

Beaulieu raised concerns about Airport revenue with County Manager Scroggins on December 4, 2023, which can be reasonably inferred to have been shared with the County and the Individual Commissioners. Mr. Beaulieu's statement, "I searched the online county records and could only find expenditures for the airport. I could not find revenue. Perhaps I missed it," suggested potential financial mismanagement. He further argued that operating the Airport for revenue conflicted with Section 94 of the Alabama Constitution, which mandates public use over financial gain. The County provided no response and instead retaliated against Mr. Beaulieu for exposing these issues, violating free speech and petition rights.

14.   Notably, on September 9, 2024, the County Commission passed the FY25 budget, revealing inconsistencies in Airport revenue reporting. The FY25 budget listed Airport revenue as $174,500, while FY24 showed $723,400, and FY23 reported zero revenue. Additionally, despite a $723,400 reserve in 2024, the Airport received support from the General Fund. The rapid depletion of this reserve raises concerns of possible financial mismanagement or improper use of funds. Mr. Beaulieu contends that these discrepancies warrant further scrutiny and may suggest financial irregularities or could potentially support a False Claims Act (FCA) claim.  Due to being silenced, Mr. Beaulieu cannot raise further questions on a matter of public concern.

15.   Mr. Beaulieu also pointed out that the County's acceptance of federal grants for the Airport violated state law, specifically Section 4-4-1(6) of the Code of Alabama, which prohibits ceding control of the Airport to the FAA. Despite this conflict, the County, including the Individual Commissioners, the County's legal counsel, and Scroggins, acting individually and in their official capacities, continued pursuing and accepting  federal grants, acting under color of state law, to retaliate against Mr. Beaulieu's whistleblowing. The lawsuit they filed against him

not only sought to stop his speech but to signal that they would disregard his concerns and continue their actions in defiance of state law. Additionally, Franklin, individually and in his official capacity as Airport Manager Franklin falsely claimed that the County had no control over Airport noise and directed Mr. Beaulieu to contact the FAA, effectively admitting that the County ceded control to the FAA, thus violating state law.

16. The County's actions with regard to budget issues, the pursuit of federal grants, and a disregard for state law, were intentional and not due to ignorance. This, combined with their ongoing retaliatory campaign against Mr. Beaulieu, reveals a broader effort to silence him and intimidate him from petitioning the government. The Commissioners, acting in their individual and official capacities, had a duty to uphold the constitutional rights of the County's citizens, including Mr. Beaulieu, but, instead, conspired with Ellis and Owens to retaliate against Mr. Beaulieu, violating his First Amendment rights.

17. As a direct result of the County's and Individual Commissioners' actions - including secret deliberations, authorizing the cease-and-desist letter, passing the Resolution, and permitting the SLAPP-type lawsuit to proceed despite his prior silence - Mr. Beaulieu suffered irreparable harm to his First Amendment rights. These retaliatory actions have impaired his ability to pursue his legal case fairly and seek justice. Consequently, Mr. Beaulieu has experienced lasting damage to his reputation in the community, his ability to advocate on public issues, emotional distress, mental anguish, and sleep disturbances.

**B.    Chad Scroggins (County Manager)**

18. Beginning in November 2023, Mr. Beaulieu raised concerns about plane noise and Airport management with County and Airport Manager, Chad Scroggins ("Scroggins").

Scroggins dismissed these concerns, claiming no changes in operations. Mr. Beaulieu continued investigating, uncovering legal and ethical violations and management irregularities, and, exercising his First Amendment free speech and petition rights, communicated his findings and concerns to County officials, including Scroggins, the Individual Commissioners, Airport Manager Franklin and the County's legal counsel.

19.   Scroggins, acting in both his individual and official capacity as County and Airport Manager, and under color of state law, took deliberate steps to suppress Mr. Beaulieu's speech based on its content and limit his engagement with elected officials. On December 21, 2023, Scroggins informed Mr. Beaulieu that only he or the County's legal counsel would "receive and/or respond to," i.e., filter, further communications, thereby blocking Mr. Beaulieu from directly communicating with the County Commission.  Scroggins further limited Mr. Beaulieu's ability to petition the government by not replying to further communications about the Airport.

20.   On March 18, 2024, a cease-and-desist letter, signed by the County's legal counsel, was issued to Mr. Beaulieu, demanding that he cease all further communications regarding his complaints about the Airport (Attachment "3"). It is reasonable to infer Scroggins' direct involvement given his role as County Manager. This letter was part of an ongoing effort to silence Mr. Beaulieu and intimidate him from exercising his free speech and petition rights.

21.   Despite Mr. Beaulieu's full compliance with the cease-and-desist letter, Scroggins, acting in both his individual and official capacity as County Manager, signed the lawsuit complaint against Mr. Beaulieu on April 2, 2024. Scroggins signed the complaint under penalty of perjury, falsely declaring that Mr. Beaulieu's communications had 'persisted' and 'exponentially increased,' despite knowing that Mr. Beaulieu had ceased all communications

twelve (12) days earlier, on March 21, 2024. Almost every email Mr. Beaulieu sent to the County went to Scroggins. It is inconceivable that he was unaware that communications had stopped.

22. The lawsuit was intended to intimidate and retaliate against Mr. Beaulieu for his whistleblowing activities and to permanently silence his speech and petitioning efforts. Its filing not only chilled Mr. Beaulieu's ability to communicate with the public on a matter of public concern but also discouraged witnesses and community members from coming forward, thereby undermining his ability to pursue his legal claims effectively.

23.  During this period, Scroggins, both individually and in his official capacity as County/Airport Manager, was aware of and did nothing to prevent the coordinated retaliatory actions of planes flying to and from the Airport, including disruptive and intimidating flyovers near Mr. Beaulieu's property. His actions and inactions were taken with a retaliatory motive, under color of state law, intending to suppress and punish Mr. Beaulieu for exercising his First Amendment rights, resulting in a chilling effect on his free speech and petitioning efforts.

24.  Scroggins knowingly pursued and accepted federal grants while aware of legal conflicts with Section 4-4-1(6) of the Alabama Code, which prohibits ceding control of the Airport to the FAA. In the complaint he signed, the County falsely claims that it was preempted from addressing Mr. Beaulieu's concerns by the FAA, despite knowing this violated state law. By certifying the County's compliance with federal grant assurances, Scroggins knowingly made false representations to the federal government, potentially violating the False Claims Act. These actions were part of a broader effort to intimidate and silence Mr. Beaulieu, aiming to prevent him from exposing these violations and infringing upon his First Amendment rights.

25.  Furthermore, Scroggins was aware of statements made by Airport Manager Franklin

that directed Mr. Beaulieu to the FAA to address his noise complaints, effectively admitting that control had been ceded. Despite knowing these actions conflicted with Alabama law, Scroggins continued to support these grants, further participating in the misrepresentation to federal authorities.

26.  As a result of Scroggins' retaliatory actions, both individually and in his official capacity under color of state law, Mr. Beaulieu has suffered irreparable harm to his First Amendment rights. Scroggins' actions include his involvement in restricting Mr. Beaulieu's communications, failure to manage or address harmful Airport operations and tenant harassment, complicity in the issuance of the cease-and-desist letter and resolution, malicious signing of the SLAPP-type lawsuit complaint despite knowing its false claims, and false certification of compliance with FAA grant assurances while aware of the legal conflict with Section 4-4-1(6) of the Code of Alabama.

27.  As a consequence, Mr. Beaulieu has experienced emotional distress, mental anguish, sleep disturbances, and reputational damage. Scroggins' conduct has imposed significant burdens on Mr. Beaulieu's ability to seek redress, and created an intimidating environment that chills his speech and obstructs his right to petition the government. These actions have caused lasting harm to his standing in the community and his ability to advocate on matters of public concern.

**C.    Terry Franklin (Airport Manager)**

28.  Mr. Beaulieu raised concerns via email with Shelby County officials, including Terry Franklin, the Airport Manager ("Franklin"), about Airport management operations and practices, as well as recurrent plane noise disturbances from the Airport affecting both him personally and creating a general noise burden on nearby residential areas. Franklin, the onsite Airport Manager,

maintains a close-knit relationship with Airport tenants and users. The OTM flight school has its office in the Airport office building. Following Mr. Beaulieu's complaints, Airport tenants, including flight schools, private pilots, and other users, engaged in retaliatory plane conduct, such as deliberate flyovers, flybys, and targeted airplane noise directed at Mr. Beaulieu and his property. Mr. Beaulieu notified the County, including Franklin, of this conduct, seeking redress.

29.  Franklin was also notified that planes have been flying out of the Airport with their ADS-B transmitters turned off to avoid detection and to harass Mr. Beaulieu and his counsel. Despite this, Franklin has taken no action as the manager/landlord to stop the retaliation by the County's tenants, including flight schools and their pilots, who deliberately hide their identities. By allowing these retaliatory flyovers and flybys to continue, Franklin, under color of state law, has perpetuated an atmosphere of harassment in collaboration with the pilots and flight schools, aiming to intimidate and punish Mr. Beaulieu for his free speech and petitioning activities protected under the First Amendment.

30.  Franklin's inaction, especially in allowing the disabling of ADS-B transmitters to conceal the planes' identities, has emboldened the perpetrators, effectively shielding them and sanctioning their retaliatory conduct. This shielding not only prevents Mr. Beaulieu from identifying the specific aircraft causing harm but also obstructs his ability to gather evidence, effectively suppressing his free speech and petition rights. Franklin has also falsely claimed that nothing could be done about flight school or other plane noise from the Airport, deflecting complaints to the FAA. This was a pretext, as Franklin knew the Airport had the authority to take action but chose to protect Airport interests, particularly the flight schools, under the guise of FAA preemption/grant assurances. By failing to take corrective action as Airport Manager and

actively allowing this retaliatory conduct to continue, Franklin, acting individually and in his official capacity under color of state law, not only sanctioned the retaliation against Mr. Beaulieu but also created a climate of fear, further coercing Mr. Beaulieu into abandoning his lawful exercise of free speech and petition rights.

31.    Franklin is a board member of the Aviation Council of Alabama (ACA). The ACA is interested in maximizing airport operations and advocates for flight schools by supporting the federal grant mandate that favors flight schools. Franklin was made aware of legal issues concerning the County/Airport accepting federal grants in  emails Mr. Beaulieu sent directly to him on both February 9th and February 16th, 2024.  Despite being notified that the County's acceptance of federal grants for the Airport violates Section 4-4-1(6) of the Code of Alabama, which prohibits ceding control of the airport to the FAA, Franklin has been complicit in the County's continued pursuit and acceptance of federal FAA funds.

32.    The County Commission recently applied for another grant, aware of its illegality and the fraud involved in misrepresenting compliance with state law to secure federal funds. Franklin's complicity in pursuing these grants, despite their clear illegality, sends a message of intimidation intended to silence Mr. Beaulieu. This retaliatory conduct, carried out under color of state law, directly violates Mr. Beaulieu's First Amendment rights to free speech and to petition the government by punishing him for speaking out against the Airport's practices and challenging Franklin's disregard for the law.

33.    On February 18, 2024, the undersigned counsel called a plane owner concerning noise and the owner returned the call while at the Airport. The owner stated he was not doing anything wrong and walked into the office and attempted to hand his phone to Franklin to

support and confirm this statement. Franklin refused the phone call and the conversation ended. This incident was followed up the same day with an email from Mr. Beaulieu asking for Franklin/the Airport/the County to preserve all video footage of the encounter.  Mr. Beaulieu also stated in his email that based on his information the County (Franklin) "… is deliberately encouraging the nuisance."  The retaliation from pilots continues. Franklin's approval of this retaliatory conduct, under color of state law, blatantly favors flight schools and Airport operations over Mr. Beaulieu's rights, thereby violating his First Amendment rights to free speech and to petition the government by punishing him for exposing the Airport's practices.

34.  On March 2, 2024, Mr. Beaulieu notified County officials, including Franklin, of specific noise disturbances caused by the County's tenants, such as the flight school Over the Mountain Aviation ("OTM"). Within two hours of his complaint, he was subjected to deliberate harassment by planes from the Airport, including one owned by OTM and another by Defendant Robert Scott Grant ("Grant"), President of the Shelby County Aviation Association. Franklin has allowed this type of retaliatory conduct to continue. His approval of or inaction regarding  such actions, under color of state law, violates Mr. Beaulieu's First Amendment rights to free speech and to petition the government, punishing him for challenging the Airport's practices and Franklin's compliance with the law.

35. According to public records provided by the County, on March 15, 2024, Franklin received an email from Grant, who had forwarded to Franklin a short string of email communications between Grant, Birmingham Flight Center ("BFC"), and its Director or Operations, Greg Floyd, in which Grant falsely claimed that a legitimate communication regarding plane noise that Mr. Beaulieu had sent to BFC, where Grant is employed as a flight

instructor, on March 14, 2024, constituted "harassing communications," stating that "a warrant could now be in order" (Attachment "2").   In forwarding the email to Franklin, Grant added, "Here's a crossed line," referring to Mr. Beaulieu's email. Grant's "crossed line" statement to Franklin would make no sense to Franklin unless Franklin was already 'in on the game' to set up Mr. Beaulieu and retaliate against him with criminal charges. Franklin's participation shows his ongoing attempts, or at the very least his complicity with others, under color of state law, to retaliate against Mr. Beaulieu and potentially initiate criminal action against him - all to knowingly violate Mr. Beaulieu's First Amendment protected speech and petitioning rights by suppressing his efforts to address government misconduct and to intimidate him into silence.

36.  In both his individual and official capacity as Airport Manager, and under color of authority, Franklin permitted targeted flyovers and noise disturbances to continue, despite his responsibility to manage the Airport and protect the public. By failing to act, participating with Grant to silence and criminalize Mr. Beaulieu for raising concerns about the Airport's operations, and involving himself in the Airport's grant process despite potential violations of state law, Franklin created and has perpetuated a hostile environment meant to intimidate Mr. Beaulieu, thereby chilling his speech and violating his First Amendment rights to free speech and petition the government and punishing Mr. Beaulieu for speaking out against the Airport's practices.

37.  As a direct result of Franklin's retaliatory actions and inactions, both individually and in his official capacity under color of state law, Mr. Beaulieu has suffered irreparable harm to his First Amendment rights to free speech and petition. He has endured emotional distress, mental anguish, sleep disturbances, and reputational damage. These actions have significantly burdened his ability to seek redress, intimidated him, and created a chilling effect on his speech,

obstructing his right to petition the government. The harm caused has had a lasting impact on his

standing in the community and his capacity to advocate on matters of public concern.

### D.    County Legal Counsel (Frank "Butch" Ellis and J. Bentley Owens)

38.  Mr. Beaulieu engaged in constitutionally protected speech and petitioning by raising

concerns with the County's legal counsel regarding noise disturbances, operations, and

management practices at the Shelby County Airport. He presented questions about compliance

with federal and state law, highlighted potential violations, requested corrective action, and

provided an official notice of his legal claims and intent to sue as required under Alabama law.

39.  Defendants, Attorneys, Frank C. "Butch" Ellis, Jr. ("Ellis") and J. Bentley Owens,

III, ("Owens"), acting in their individual and official capacities as the County's legal counsel,

participated in a retaliatory campaign under color of state law to suppress Mr. Beaulieu's First

Amendment rights to free speech and to petition the government. Ellis and Owens knowingly

escalated legal maneuvers to silence and punish Mr. Beaulieu for his whistleblowing efforts

against the County, which their law firm has represented for over 60 years, and orchestrated a

coordinated effort to silence Mr. Beaulieu through intimidation and false accusations without any

compelling governmental interest.

40.  On March 18, 2024, Owens, individually and his official capacity, issued a

cease-and-desist letter under color of state law demanding that Mr. Beaulieu stop all

communications with "all commissioners, county officials and...operators and tenants of the

airport (Attachment "3"). The letter stated that if Mr. Beaulieu ceased communications and

actions, no further action would be taken. Mr. Beaulieu received the letter via U.S. Mail on

March 21, 2024, and, despite having done nothing wrong, immediately ceased all

communications and actions under duress, suffering immediate and irreparable harm to his First Amendment free speech and petitioning rights. The letter also instructed that all future communications should be through counsel. Acting on his own behalf, Mr. Beaulieu called Owens to confirm receipt of the letter as instructed, leaving a message. Owens did not return the call.

41.   Thereafter, the retaliatory actions taken by the County escalated rapidly. On March 25, 2024, just one week after the cease-and-desist letter, a pre-drafted Resolution (No. 2024-03-25-09) - prepared by Ellis and Owens and authorizing a lawsuit against Mr. Beaulieu - appeared before the County Commission at their regular meeting. This Resolution was presented without any open deliberation as required under the Alabama Open Meetings Act (AOMA) (Attachment "4"). Ellis, having personally served as legal counsel for the County for over 50 years, would have been aware that private deliberation on this matter violated the AOMA. His involvement in this improper process demonstrates a deliberate intent to retaliate against Mr. Beaulieu and suppress his First Amendment free speech and petition rights. The County Commission subsequently passed this Resolution, prepared by Ellis and Owens, authorizing a SLAPP-type lawsuit against Mr. Beaulieu.

42.   The Resolution, which falsely claimed that Mr. Beaulieu's conduct had "continued and intensified," despite Ellis's and Owens' awareness that he had ceased all communications, passed unanimously by the five of the nine members present at the March 25, 2024, Commission meeting. The false statements were purposely pled to retaliate against and punch Mr. Beaulieu for raising questions about the Airport's operations and management, highlighting a motive to suppress any scrutiny of the County's legal counsel's handling of Airport matters, violating Mr.

Beaulieu's First Amendment free speech and petition rights.

43.  On April 2, 2024, nearly two weeks after Mr. Beaulieu had ceased all communications in compliance with the cease-and-desist letter, Ellis, later joined by Owens, filed a retaliatory lawsuit on behalf of Shelby County. This lawsuit falsely claimed that Mr. Beaulieu's conduct had continued, despite Ellis and Owens knowing that Mr. Beaulieu had complied with the cease-and-desist letter. These patently false allegations were purposely included in the lawsuit complaint to advance baseless legal claims against Mr. Beaulieu, designed to suppress, silence, and punish him for raising concerns about the Airport and Ellis personally. These actions directly violated Mr. Beaulieu's First Amendment rights to free speech and to petition the government.

44.  In the lawsuit, Ellis and Owens sought both a preliminary and permanent injunction against Mr. Beaulieu's speech and petition rights and asserted fabricated claims for monetary damages, further employing financial coercion to suppress his constitutionally protected speech and petitioning activities. Their actions demonstrated a clear motive to protect the County's business interests rather than address any genuine public harm. By including these baseless claims for damages, they aimed to punish Mr. Beaulieu for raising questions about the Airport and their own conduct, directly violating his First Amendment free speech and petitioning rights.

45.  Ellis and Owens escalated their retaliatory campaign by employing tactical legal harassment, using excessively aggressive and inflammatory pleadings, including personal attacks against Mr. Beaulieu and his counsel, aimed at prejudicing the court. These litigation tactics were designed not only to intimidate Mr. Beaulieu into abandoning his efforts to challenge the Airport's operations but also to portray his constitutionally protected speech and petition activities in a negative light. By resorting to personal attacks and denigrations in their filings,

Ellis and Owens sought to discredit Mr. Beaulieu and his counsel and silence his voice in public discourse, thereby violating his First Amendment rights.

46.  Ellis and Owens, as County attorneys and in-house legal counsel, are duty-bound to represent the County's lawful interests, not to act as legal guardians for private airport tenants and operators. By using their authority to pursue a lawsuit that sweeps broadly enough to protect both the County and its private tenants, they have overstepped their roles, furthering an impermissible effort to suppress public discourse and silence Mr. Beaulieu's speech.

47.  When Mr. Beaulieu raised concerns about improper use of public land for private boat storage, the County and Ellis failed to act until Mr. Beaulieu pushed the issue, after which the boats were cleared. Ellis's inaction and retaliation aimed to punish Mr. Beaulieu for petitioning efforts, violating his First Amendment rights.

48.  Mr. Beaulieu also questioned whether County Commissioners had received free plane rides, which Ellis allegedly provided. Despite a formal request for an investigation, the County did not respond. Ellis' and Owens' retaliatory actions appear designed to punish Mr. Beaulieu for raising these issues, infringing on his free speech and petition rights.

49.  Through public records requests made by Mr. Beaulieu and later his counsel to the County and the Alabama Department of Transportation (ALDOT), it was revealed that Defendant, Robert Scott Grant ("Grant"), a pilot, flight instructor, and President of the Shelby County Aviation Association (SCAA), was supporting and participating with County's legal team. Ellis would have been aware of the false and malicious emails sent by Grant to the FAA and TSA on March 5, 2024, falsely portraying Mr. Beaulieu and his counsel as security threats to the Airport, but did nothing. Additionally, Ellis was directly copied on the August 26, 2024,

email Grant sent to ALDOT, which falsely accused Mr. Beaulieu and his counsel of engaging in a campaign of legal harassment. Notably, Grant sent the ALDOT email while Mr. Beaulieu's counsel's public records request to ALDOT was pending. Rather than correcting the baseless allegations in Grant's emails, Ellis, both individually and in his official capacity, aligned himself with Grant's efforts to escalate the retaliatory campaign, further violating Mr. Beaulieu's First Amendment rights to free speech and to petition the government.

50. Ellis and Owens were also specifically informed by Mr. Beaulieu of the legal conflict under Alabama law prohibiting the ceding of airport control to the FAA through federal grants. Despite this, they advised and supported the County's pursuit of such grants, enabling potential False Claims Act violations. By dismissing Mr. Beaulieu's concerns on a matter of public interest, they further suppressed his speech and petitioning efforts, infringing upon his First Amendment rights.

51. Ellis and Owens were repeatedly informed about retaliatory plane conduct from the Airport directly targeting Mr. Beaulieu and his property, including intentional flyovers and the use of disabled ADS-B transmitters to conceal aircraft identities. Despite this knowledge, they took no action to address or prevent these retaliatory acts, effectively sanctioning the conduct and creating a climate of intimidation against Mr. Beaulieu's exercise of his free speech and petition rights. Ellis and Owens, individually and in their official capacities as the County's legal counsel, acting under color of state law, failed to respond to Mr. Beaulieu's communications or take any action as legal counsel for the County/Airport to prevent the County's Airport tenants and users from causing harm, including the retaliatory harassment and intimidation of Mr. Beaulieu by their planes.

52.  By engaging in retaliatory actions - issuing the cease-and-desist letter, filing the lawsuit, pursuing federal grants, failing to correct false accusations, and not intervening in harassment - Ellis and Owens suppressed Mr. Beaulieu's constitutional rights, prioritizing County interests over their duty to uphold the law. These actions have caused lasting harm to Mr. Beaulieu's First Amendment rights, resulting in emotional distress, mental anguish, sleep disturbances, reputational harm, and burdens on his ability to advocate on matters of public concern.

**E.      Robert Scott Grant and the Shelby County Aviation Association (SCAA)**

53.  Mr. Beaulieu exercised his constitutionally protected right to free speech by raising concerns with County officials about the plane noise from Airport tenants, which was affecting both him and the community. His complaints also addressed the Airport's operations and management practices, directly implicating matters of public concern. Despite these efforts, Airport tenant Robert Scott Grant ("Grant"), a pilot, flight instructor, and President of the Shelby County Aviation Association ("SCAA"), unexpectedly inserted himself into the situation on March 2, 2024, marking a new phase of orchestrated retaliation aimed at silencing Mr. Beaulieu.

54.  Grant, although a private individual, acted under color of state law by collaborating with Shelby County officials and working in concert with the County's legal team. As President of the SCAA and a flight instructor, Grant shares the County's interest in the perpetuation of the Airport. He has never personally met or had any dealings with Mr. Beaulieu or the undersigned counsel. However, following Mr. Beaulieu's complaints to the County about plane noise from the Airport, on March 2, 2024, after Mr. Beaulieu emailed Franklin about noise from OTM planes, he was subjected to retaliatory conduct by an OTM plane and a plane owned by Grant and

his wife (N130DG). This conduct included a loud flyover of Mr. Beaulieu's property, followed by a sharp turn and engine acceleration overhead. Mr. Beaulieu then emailed Mrs. Grant with an image from public radar tracking (ADS-B) of the flyover, advising her of potential litigation due to the deliberate noise disturbance. The undersigned counsel also called Mrs. Grant, who replied, "we know all about it," before abruptly hanging up. Mr. Beaulieu notified the County, including Franklin, Scroggins, and various Individual Commissioners, via email about this incident and the ongoing harassing plane conduct but received no response.

55. Pursuant to public records provided by the County to Mr. Beaulieu's counsel, on March 5, 2024, Grant submitted an email to the FAA and TSA falsely portraying Mr. Beaulieu, his counsel, and his 82-year-old mother as a security threat or terrorists (Attachment "1"). These fabricated reports had no factual basis and were designed to trigger a federal investigation or arrest. The County was aware of Grant's email, as it was provided to the undersigned counsel in response to a County public records request. Grant intended to intimidate Mr. Beaulieu by instilling fear of a federal investigation and the legal consequences, thereby discouraging him from continuing to speak out or petition the government about the Airport.

56. After discovering the March 5, 2024, email in August of 2024, Mr. Beaulieu experienced significant fear, compounding the irreparable harm and further chilling his ability to petition the government and exercise his First Amendment rights.

57. According to the County's records, also on March 14-15, 2024, Grant was involved in an email string between Greg Floyd, Director of Operations for Birmingham Flight Center (BFC), and Terry Franklin, Airport Manager (Attachment "2"). This exchange falsely labeled Mr. Beaulieu's legitimate communications as "harassing" and stated that "a warrant could now be in

order." Grant further remarked to Franklin, "here's a crossed line." Grant's efforts to seek legal consequences for Mr. Beaulieu's lawful complaints about the Airport further exemplify his intent to suppress Mr. Beaulieu's First Amendment speech and petitioning rights through intimidation and criminal prosecution. Grant's involvement with County officials, including Terry Franklin, shows his actions were taken under color of state law.

58. Grant's retaliatory efforts further escalated on July 19, 2024, when he filed a baseless bar complaint against Mr. Beaulieu's undersigned counsel. In the complaint, filled with false and malicious statements not only about the undersigned counsel but also about Mr. Beaulieu, Grant demanded the disbarment of the undersigned counsel and accused the Courts and the Bar of complicity if they did not comply with his demands. Grant, again, was acting on behalf of the County by doing what the County knew it could not do; as such, this effort was taken under color of state law. It should be noted that Grant's malicious attacks on the undersigned counsel mirror attacks made by the County's counsel in other court documents. His complaint was clearly intended to deprive Mr. Beaulieu of legal representation and further undermine his ability to pursue his claims and exercise his First Amendment free speech and petitioning rights.

59. On July 25, 2024, Grant, in his capacity as President of the SCAA, sent a mass email to the SCAA subscriber list, specifically soliciting information about noise complaints targeting Mr. Beaulieu. Grant was acting on behalf of the County, which has a duty to protect all citizens equally and prevent the perpetuation of harm. The County could not directly seek this information without violating that duty, so they used Grant to bypass that duty. By having Grant solicit this information, the County sought to retaliate against Mr. Beaulieu for exercising his First Amendment rights.

60.  This attempt to gather evidence was done with the intent to mobilize opposition against Mr. Beaulieu and create a hostile environment. The goal was to intimidate him, making him fear that further complaints and exercising his right to petition the government would result in more targeting and retaliation. This constituted a violation of Mr. Beaulieu's First Amendment rights, as the County, through Grant, used this tactic to silence and suppress his lawful speech.

61.  According to public records received from ALDOT on September 4, 2024, pursuant to the undersigned counsel's August 8, 2024, request, Grant, acting under color of state law, sent an email on August 25-26, 2024, to the Alabama Department of Transportation (ALDOT) (Attachment "5"). In this email, Grant falsely accused Mr. Beaulieu and his counsel of engaging in "legal harassment" and made numerous other baseless claims. Notably, Grant stated that he was "supporting and participating with" the legal team in Shelby County. This email was sent while the public records request was pending, suggesting an attempt to prejudice witnesses or otherwise discredit Mr. Beaulieu and his counsel. Acting in concert with the County's legal team and furthering the conspiracy against Mr. Beaulieu's exercise of his First Amendment rights, Grant forwarded this communication to County Attorney Ellis, clearly indicating his coordination with the County in the retaliatory actions.

62.  Grant's actions were intended to retaliate against Mr. Beaulieu for raising concerns about Airport operations and exercising his right to petition the government. By falsely accusing Mr. Beaulieu and his counsel, Grant, in concert with the County, sought to discredit, intimidate, and silence Mr. Beaulieu, effectively creating a hostile environment to deter further lawful advocacy. These actions aimed to poison the well with ALDOT, intimidate potential witnesses, and interfere with fair litigation, thereby violating Mr. Beaulieu's First Amendment rights to free

speech and petition the government.

63.  In collaboration with County officials, Grant falsely portrayed Mr. Beaulieu to federal and state agencies, including the TSA, FAA, and ALDOT, aiming to intimidate and obstruct his legal efforts. By submitting these false statements, filing a malicious bar complaint, and using targeted communications, Grant, acting in concert with County official and the County's legal team under color of state law, furthered the County's campaign to suppress Mr. Beaulieu's First Amendment rights. This coordination with state actors was designed to chill Mr. Beaulieu's free speech and obstruct him from pursuing his right to petition the government

64.  As a direct result of Grant's actions, both individually and in his capacity as President of the SCAA, acting in concert with other County officials, and under color of state law, Mr. Beaulieu has suffered irreparable harm to his First Amendment free speech and petition rights. This harm includes emotional distress, mental anguish, sleep disturbances, and reputational damage. Furthermore, Grant's ongoing retaliatory conduct and false accusations have disrupted Mr. Beaulieu's litigation efforts, imposed significant burdens on his ability to seek redress, and have intimidated him, chilling his speech and obstructing his right to petition the government. These actions have caused lasting damage to his standing in the community and his ability to advocate on matters of public concern.

**F.      Birmingham Flight Center, LLC (BFC) and Greg Floyd**

65.  Birmingham Flight Center, LLC ("BFC") and its Director of Operations, Greg Floyd ("Floyd"), knowingly and intentionally acted individually and under color of state law, in concert with Airport Manager Terry Franklin and Robert Scott Grant who was acting in concert with the Shelby County legal team, to retaliate against Mr. Beaulieu and violate his First Amendment

rights to free speech and petition.

66.  On March 14, 2024, at 6:37 P.M., BFC, through its Director of Operations, Greg Floyd, directed or allowed one of its planes (possibly piloted by Grant) to fly to the Airport for training, despite the Airport already having planes in the air and other nearby airports being empty. This action was intended to provoke Mr. Beaulieu into sending an email, which BFC and others would later falsely characterize as "harassment."

67.  In response to the unexpected arrival of the BFC plane, which added to the noise from ongoing flight operations, Mr. Beaulieu sent an email to BFC regarding their aircraft.

68.  On March 15, 2024, Floyd, acting on behalf of BFC, forwarded Mr. Beaulieu's email to Grant stating, "Another contact after we've asked them to stop contacting us." This statement was false, as BFC had never requested that Mr. Beaulieu cease contacting them. The use of the word "another" indicates a premeditated attempt to fabricate a pattern of harassment, suggesting, 'here is the next one we were waiting for.'

69.  Grant then responded to Floyd's email, stating, "ok," "harassing communications," and "A warrant could now be in order." Grant's use of the word "now" demonstrates that they believed they had "now" manufactured the pretext needed to falsely pursue legal action, despite Mr. Beaulieu having committed no crime (Attachment "5").

70.  Grant, individually and as President of the SCAA, acting in concert with the County legal team, forwarded this email string to Airport Manager Terry Franklin, stating, "Here's a crossed line." This action reveals Franklin's involvement in their plan to frame Mr. Beaulieu for"'harassing communications." The phrasing, particularly the use of "a" before "crossed line," suggests they were eagerly waiting for an opportunity to act against Mr. Beaulieu. This string

clearly indicates a premeditated effort to silence Mr. Beaulieu's lawful speech through criminal prosecution.

71.  This email string was produced alongside other County records, likely submitted directly by Franklin or passed through him to others, further implicating the County. It can be reasonably inferred that Franklin forwarded the email to Ellis, the County attorney. These coordinated actions, carried out individually and under color of state law, provided a false pretext for further retaliation against Mr. Beaulieu. The actions included issuing a cease-and-desist letter, passing a retaliatory resolution to sue, and filing a SLAPP-type lawsuit - all designed to silence Mr. Beaulieu's speech and suppress his right to petition for redress concerning Airport noise issues, showing the extreme lengths they were willing to go to stop him from speaking.

72.  The County also used another of Mr. Beaulieu's legitimate communications to BFC, which appears to have been provided by Grant, entirely out of context in the lawsuit complaint filed against him, presenting it as a purported example of harassment warranting civil, if not criminal, prosecution. This establishes another link, indicating that Floyd/BFC was working directly with the County, or through Grant in concert with the County's legal team, to provide information that was then deliberately manipulated with the intent of chilling Mr. Beaulieu's speech.

73.  By falsely portraying Mr. Beaulieu's legitimate noise complaints as criminal, Floyd and BFC actively participated in a scheme to suppress his First Amendment rights to petition the government. They coordinated with Grant and Franklin in a concerted effort to intimidate Mr. Beaulieu into silence, thereby chilling his speech and his right to petition the government for redress of grievances.

74.  As a direct result of the coordinated actions of BFC and Floyd, in concert with County officials (including Grant) taken under color of state law, Mr. Beaulieu has suffered irreparable harm to his First Amendment free speech and petition rights, along with emotional distress, mental anguish, sleep disturbances, and reputational damage. Furthermore, these actions, designed to intimidate and silence Mr. Beaulieu, have caused lasting damage to his standing in the community, as well as his ability to advocate on matters of public concern.

### G.    Charles Edward Poskey and American Drilling of Alabama, Inc.

75.  Mr. Beaulieu raised concerns about noise and lease violations involving the County's airport tenants with various officials, including Attorney Ellis.

76.  Defendant Charles Edward Poskey ("Poskey"), individually and as owner and incorporator of American Drilling of Alabama Inc. ("American Drilling"), actively participated in the retaliatory campaign against Mr. Beaulieu to suppress his First Amendment rights. Poskey and American Drilling acted under color of state law through their actions at the Shelby County Airport. They worked in concert with County officials, including Attorney Ellis, the Shelby County Aviation Association ("SCAA"), as well as Robert Scott Grant ("Grant"), President of the SCAA, who collaborated with the County's legal team.

77.  Poskey/American Drilling regularly hosts SCAA meetings and events at the American Drilling hangar, in violation of their lease with the County, which permits only airplane storage and does not authorize the hangar as a "place of assembly." Despite these restrictions, the County allows the SCAA to use the hangar exclusively for their gatherings, improperly allowing public property to be used by a private company beyond its intended purpose - a public ethics violation. Poskey has also stated that County officials hold undisclosed

meetings with the SCAA in the hangar to discuss Airport-related plans, meetings that have never been made known to the public. This allowance of lease violations and secrecy by the County, in which Poskey is directly involved, illustrates his close coordination with County officials and his influence over Airport activities. The use of his hangar for SCAA events and undisclosed County meetings further demonstrates Poskey's role in concert with County authorities to retaliate against Mr. Beaulieu.

78.    Poskey/American Drilling played a key role in issuing the cease-and-desist order against Mr. Beaulieu to silence his speech and activities related to the Airport. On March 14, 2024, Poskey/American Drilling hosted an event at the hangar for SCAA members. Mr. Beaulieu communicated to the County his concern that the event violated the lease of public property and that it would be used as a forum to discuss or plan retaliation against him for his complaints about Airport plane noise. The undersigned counsel also communicated these concerns to Poskey/American Drilling.

79.    Mr. Beaulieu and his counsel went to the public Airport parking lot and confirmed that the event was being held at the American Drilling hangar. Poskey came out and waved down Mr. Beaulieu and his counsel as they were leaving the parking lot. Poskey, visibly agitated, was cussing and jumping around as he spoke with Mr. Beaulieu. Poskey stated pilots had been passing Mr. Beaulieu's photo around. Despite Mr. Beaulieu calmly explaining from inside his vehicle his concerns about the event, and the plane noise and misconduct from the Airport, Mr. Poskey declared that he was going to contact County Attorney Butch Ellis to obtain a cease-and-desist order to "stop this sh*t," which the County's attorney subsequently issued, clearly  demonstrating that Poskey/American and the County were acting in collusion under color

of state law.

80.  Notably, the retaliatory cease-and-desist order directed at Mr. Beaulieu extended

beyond County officials to Airport tenants, including Poskey, American Drilling, the SCAA, and

Grant (in concert with the County's legal team). This broad scope indicates collusion among the

County, Poskey/American Drilling, the SCAA, and Grant to suppress Mr. Beaulieu's First

Amendment rights under color of state law. The order aimed to silence his complaints about

tenant activities causing harm to him and the community. On March 22, 2024, just one day after

Mr. Beaulieu received the cease-and-desist letter, Poskey's plane, N63895, was flown directly

over Mr. Beaulieu's home. Poskey/American Drilling planes have also engaged in other loud

flybys and flyovers to harass Mr. Beaulieu.

81.  As a direct result of Poskey's and American Drilling's actions, taken under color of

state law, Mr. Beaulieu has suffered irreparable harm to his First Amendment rights to free

speech and to petition the government.   Furthermore, these actions, designed to intimidate and

silence Mr. Beaulieu, have caused lasting damage to his standing in the community, as well as

his ability to advocate on matters of public concern, and have caused Mr. Beaulieu to suffer

emotional distress, mental anguish, and reputational damage.

### H.    Over the Mountain Aviation, LLC, Slipstream Aviation, LLC, and Barry Franks

82.  Defendant, Over the Mountain Aviation, LLC ("OTM"), is a flight school based at

the Airport doing business as "Over the Mountain Aviation" and is owned by Defendant, Barry

Franks ("Franks"). OTM operates a fleet of planes registered under both OTM and Slipstream

Aviation, LLC ("Slipstream") for flight training. OTM shares office space with the County

Airport Manager, Terry Franklin, maintaining a direct and ongoing connection with Franklin and

County officials. Franks, individually and through his management of OTM and Slipstream, acted in concert with County officials to retaliate against Mr. Beaulieu. Further, by acting in concert with County officials and taking actions under color of state law, OTM, Franks, and Slipstream have caused harm to Mr. Beaulieu's First Amendment free speech and petition rights.

83.   In November 2023, Mr. Beaulieu began notifying Franks and County officials, including Franklin, that OTM and Slipstream's flight operations were contributing to noise disturbances in the community. These disturbances resulted from aircraft from the OTM flight school owned and operated by Franks, doing repetitive touch-and-go maneuvers, and planes being flown over residents' homes, at times as frequently as every five minutes. OTM operates from morning to evening, seven days a week, including holidays (including Thanksgiving Day).

84.   Mr. Beaulieu raised concerns about the noise disturbances, but OTM provided no meaningful response, and the County also failed to address the issues. Rather than remedying the situation, OTM escalated its flight operations in direct retaliation against Mr. Beaulieu. These retaliatory actions included deliberate flyovers and flybys of his property, gunning of engines, and early morning flights, including on weekends, that caused sleep disturbances.

85.   These maneuvers are deliberate actions intended to harass and intimidate Mr. Beaulieu, silencing his exercise of free speech and right to petition. By aligning with County officials and continuing this conduct despite the harm caused, OTM/Slipstream/Franks aim to deter further complaints, directly infringing upon Mr. Beaulieu's First Amendment rights. The County, County Commission, the County's legal counsel, Franklin, and Scroggins are fully aware of OTM's targeted harassment and retaliatory actions against Mr. Beaulieu. Despite their authority and responsibility as Airport operators and landlords to address this conduct, they have

willfully failed to act, creating a clear nexus between OTM's actions and state authority, implicating a coordinated effort to punish Mr. Beaulieu for exercising his First Amendment free speech and petition rights.

86.   Franklin, as Airport Manager, and the County, in their capacity as landlord with authority and control over Airport operations, were also advised that OTM and Slipstream planes were operating with their ADS-B transmitters turned off, deliberately concealing their identities to avoid radar tracking. Despite this knowledge, Franklin and the County took no action, actively colluding with OTM by allowing this retaliatory practice to continue unchecked. The inability to identify the planes due to the disabled ADS-B transmitters obstructed Mr. Beaulieu's ability to petition the government, as it prevented him from identifying specific actors involved. This ongoing collusion between the County and OTM/Slipstream, under Franklin's direction and authority, demonstrates that OTM/Slipstream/Franklin acted under color of law, directly implicating the County in violating Mr. Beaulieu's First Amendment rights by enabling retaliation aimed at punishing and silencing him.

87.   When Mr. Beaulieu initially contacted the Airport to inquire about plane noise. Franklin claimed ignorance of the operators' identities. However, when pressed, Franklin stated, "They [OTM] can do touch-and-goes all day long if they want to," and falsely claimed, "There is nothing we can do about it, call the FAA." This response demonstrates Franklin's refusal to exercise his authority to address the situation, despite having the ability to take corrective action as the Airport Manager. By failing to intervene and falsely directing Mr. Beaulieu to the FAA, Franklin allowed OTM's conduct to continue unchecked. This abdication of responsibility facilitated OTM's actions and demonstrated that OTM, Franks, and Slipstream were operating in

concert with the County under color of state law.

88.  Franks exploited his position and close relationship with County officials, particularly Franklin, to harass and intimidate Mr. Beaulieu. This deliberate misuse of familiarity not only furthered the retaliatory campaign,  but also reinforced the constitutional violations under color of state law, as Franks acted in concert with the County to suppress Mr. Beaulieu's First Amendment rights.

89.  The County's failure to address the retaliatory plane conduct, despite repeated notice, demonstrates improper favoritism toward Franks', OTM's, and Slipstream's business interests, further evidencing collusion. The retaliatory lawsuit against Mr. Beaulieu even referenced potential business harm to tenants like OTM, revealing that the County prioritized airport business interests over Mr. Beaulieu's constitutional rights. By allowing these actions to continue unchecked, the County and its officials enabled OTM, Slipstream, and Franks to retaliate under color of state law, punishing Mr. Beaulieu for exercising his First Amendment rights to free speech and to petition the government.

90.  This retaliatory conduct by OTM is ongoing. On September 21 and 22, 2024, OTM's Slipstream plane, N5366J, conducted targeted flybys over Mr. Beaulieu's property with its ADS-B transmitter turned off. This conduct occurred with the same plane (N5366J) as well as OTM's N4473X plane on Sunday afternoon, October 6, 2024. Despite being informed of this practice, the County has continued to allow its tenant flight schools, including OTM, to operate with their transmitters off, thereby colluding with OTM under color of authority. This collusion has facilitated this retaliatory conduct, violating Mr. Beaulieu's First Amendment rights by punishing him for petitioning the government.

91.  Other recent examples include an October 4, 2024, flyover by OTM plane N6602H at 2:51 PM, where it flew a mile and a half south and west of the Airport to directly fly over the Beaulieu property. Later, the same plane took off and immediately turned left, avoiding the homes, highlighting the intentional nature of the earlier flyover. On Saturday, October 5, 2024, at 7:38 AM, Slipstream/OTM plane N55088 (with the transmitter on) deliberately veered toward the Beaulieu property after takeoff, traveling nearly two nautical miles toward the Beaulieu property (causing noise) just to turn east.

92.  Further evidence of retaliation is shown by a non-OTM plane departing shortly after these incidents, flying over the interstate instead of the homes, indicating that OTM's flyovers were intentionally targeting Mr. Beaulieu. The County's refusal to modify this behavior despite repeated complaints, and its ongoing sanction of OTM's conduct, underscores a coordinated effort to chill Mr. Beaulieu's speech and petition rights in violation of the First Amendment.

93.  As a direct result of the coordinated and retaliatory actions of OTM, Slipstream, and Franks, in concert with the County and its officials, acting under color of state law, Mr. Beaulieu has been silenced on Airport issues despite his lawful right to speak out and petition the government for redress of his grievances. OTM's continued campaign of retaliation, bolstered by the County's deliberate decision to side with its tenants over constitutional protections - fully aware that their actions aimed to silence Mr. Beaulieu—has not only suppressed his First Amendment rights but has also caused him significant and ongoing harm, including emotional distress, mental anguish, sleep disturbances, increased stress, and damage to his reputation.

I.    **WaterWings Seaplanes, LLC, CPC2 Aviation, LLC, and Charles Welden**

94.  Defendant, WaterWings Seaplanes LLC ("WaterWings"), is also a flight school

tenant at the Airport and is owned and managed by Defendant, Charles Welden ("Welden"). WaterWings operates a plane with tail number, N730MC, registered under Defendant, CPC2 Aviation, LLC ("CPC2"). In retaliation for Mr. Beaulieu exercising his free speech and petition rights concerning plane noise and Airport operations, WaterWings has used this aircraft to conduct disruptive and targeted flyovers and flybys near his home. The plane has been deliberately flown over Mr. Beaulieu's residence with its engines revved excessively, generating intense noise designed to harass, intimidate, punish, and silence Mr. Beaulieu in retaliation for exercising his First Amendment rights to free speech and to petition the government.

95.  On March 28, 2024, the undersigned counsel notified Ellis, the County's legal counsel, that the plane lacked insurance, appeared to be operating under a sublease - both in violation of the County's lease terms - and was creating recurrent, deliberate and retaliatory noise disturbances. Despite these notifications, the County took no action, and the retaliatory conduct continued. County records later revealed that N730MC was not under any lease and did not appear in County records; it was registered with the FAA under CPC2, a dissolved corporation that Welden reinstated on September 10, 2024 - the same date as the latest direct retaliatory flyover of Mr. Beaulieu's home.

96.  On multiple occasions, counsel notified WaterWings, Welden, CPC2, and the County (through its legal counsel) about the improper storage, unauthorized use, and noise disturbances caused by the N730MC aircraft. Despite clear knowledge of these violations and the retaliatory nature of the flyovers, the County took no corrective action, thereby sanctioning WaterWings', Welden's, and CPC2's targeted harassment of Mr. Beaulieu under color of state law. By ignoring these violations and allowing the continued use of the improperly stored aircraft for disruptive

flyovers, the County transformed the conduct into state action, making it an extension of its authority. Welden/WaterWings/CPC2 relied on their close relationship with the County to continue harming Mr. Beaulieu and the community without restraint. This collaboration sent a clear message that Mr. Beaulieu's exercise of his First Amendment rights would result in ongoing harassment, sanctioned by the County, thereby intensifying the retaliation and reinforcing the notion that the exercise of free speech and petitioning for redress of grievances would be punished.

97. As a direct result of Welden's, WaterWings', and CPC2's actions, taken under color of state law, Mr. Beaulieu has suffered irreparable harm to his First Amendment rights to free speech and to petition the government.   Furthermore, these actions, designed to intimidate and silence Mr. Beaulieu, have caused lasting damage to his standing in the community, as well as his ability to advocate on matters of public concern, and have caused Mr. Beaulieu to suffer emotional distress, mental anguish, and reputational damage.

## COUNT II

### Conspiracy to Retaliate and Deprive Plaintiff of
### First Amendment Rights (42 U.S.C. § 1983)

#### Introduction

Plaintiff, Henri Beaulieu ("Mr. Beaulieu"), brings this claim under 42 U.S.C. § 1983, alleging that the Individual Commissioners, both in their individual and official capacities, along with Defendants Chad Scroggins, Terry Franklin, Frank "Butch" Ellis, J. Bentley Owens, Robert Scott Grant, and the Shelby County Aviation Association (SCAA), have acted and continue to act under color of state law in a coordinated effort to retaliate against him for exercising his First Amendment rights to free speech and to petition the government regarding noise disturbances

and misconduct at the Shelby County Airport ("Airport"). This conspiracy involved an agreement and a series of actions by each Defendant to suppress Mr. Beaulieu's constitutional rights, aiming to silence him to protect their business interests at the Airport, thereby prioritizing those interests over his fundamental rights.

**A.**   **Shelby County (Commission/the Individual Commissioners):**

98.   Mr. Beaulieu communicated his concerns about noise and misconduct at the Airport to the County and Individual Commissioners, raising critical questions about their management. The Individual Commissioners, acting both in their individual and official capacities under color of state law, along with the County's legal counsel, mutually agreed to take retaliatory action against Mr. Beaulieu to suppress his whistleblowing. They recognized that responding to his inquiries could expose them to liability, and thus collectively decided not to reply to his communications.

99.   Ellis, the County's legal counsel, has admitted that the County, in coordination with the Individual Commissioners and County Manager Scroggins, acting both individually and in their official capacities and under color of state law, requested Mr. Beaulieu to limit his communications to the County's legal counsel (Ellis or Owens) or the County Manager, Scroggins. This request was made in a December 21, 2023, email from Scroggins, stating that only he, Ellis, or Owens would "receive and/or respond" to Mr. Beaulieu's communications. This was an initial attempt to shield the Commissioners from Mr. Beaulieu's whistleblowing and to restrict his lawful communications.  Mr. Beaulieu declined to comply, disagreeing with the directive and wishing to convey his concerns directly, particularly given Scroggins' stonewalling on matters of public concern and the potential for the County's legal counsel to filter what was

conveyed to its clients.

100.  On March 11, 2024, the Individual Commissioners, acting both individually and in their official capacities, coordinated with County Attorney Ellis and other parties to issue a cease-and-desist letter to Mr. Beaulieu. In furtherance of this effort, Ellis directed the drafting of the letter, which was subsequently issued by the County's legal counsel, J. Bentley Owens, on March 18, 2024, under color of state law (Attachment "3"). This letter aimed to suppress Mr. Beaulieu's communications with County officials, Airport tenants, and others related to the Airport, thereby infringing on his First Amendment rights to free speech and petition on matters of public concern.

101.  Upon information and belief, this coordinated effort also involved County Manager Scroggins, as well as Robert Grant, President of the Shelby County Aviation Association ('SCAA"), who has actively supported and participated in the County's legal actions. Grant's presence at the March 11th meeting suggests his involvement in the County's retaliatory campaign against Mr. Beaulieu.

102.  Commissioner Allison, a licensed attorney. has acknowledged that "numerous commissioners" requested the County's legal counsel, Frank "Butch" Ellis ("Ellis"), to handle Mr. Beaulieu's communications. She further stated that she was aware of the cease-and-desist letter and "approved this action." Since no public meeting was held to discuss this 'approval,' it necessarily occurred in a secret or serial meeting, under color of authority, demonstrating an early agreement to conspire against Mr. Beaulieu to silence him in violation of his First Amendment rights.

103.  Mr. Beaulieu received the cease-and-desist letter on March 21, 2024, via U.S. Mail

and immediately complied under duress. Despite his full compliance, the Commissioners, in coordination with Ellis, proceeded to pass a pre-drafted resolution on March 25, 2024, to sue Mr. Beaulieu. This Resolution, also prepared by Ellis, contained malicious and false statements against Mr. Beaulieu and his family, aimed at further silencing him and punishing him for exercising his First Amendment rights.

104.   On March 25, 2024, despite Mr. Beaulieu having ceased all communications for four days, the Individual Commissioners, acting both individually and in their official capacities under color of state law, furthered their agreement to retaliate against him by passing Resolution No. 2024-03-25-09 (Attachment "4"). This Resolution falsely claimed that Mr. Beaulieu's communications had "continued, intensified, become unrelenting, incessant, and intimidating," falsely characterizing them as harassment to justify authorizing legal action against Mr. Beaulieu to punish Mr. Beaulieu for exercising his First Amendment rights and to justify a SLAPP-type lawsuit against him.

105.   Commissioner Brumlow has asserted that Mr. Beaulieu's whistleblowing exposed the Individual Commissioners to the risk of ethics complaints and personal liability, revealing their motive for retaliation. Brumlow also admitted he was aware of the "preparation" of the Resolution and "wholeheartedly approved the action." No public meeting was held to discuss this preparation, indicating that these decisions were made in secret among the Individual Commissioners and the County's legal counsel, under color of state law. This secrecy further reveals their conspiracy to retaliate against Mr. Beaulieu for exercising his protected speech and petition rights.

106.   Twelve days after Mr. Beaulieu complied with the cease-and-desist letter, on April

2, 2024, the Individual Commissioners, acting both individually and in their official capacities under color of state law, followed through on their conspiracy with the County's legal counsel (Ellis and Owens), and Scroggins, and, permitted the filing of a retaliatory SLAPP-type lawsuit against him. Despite knowing that Mr. Beaulieu had ceased all communications, they falsely alleged in the lawsuit that his actions had "exponentially increased." The County, Scroggins, Owens, and Ellis have since refused to correct these misrepresentations, as doing so would reveal their actions as retaliatory and legally baseless. The County's lawsuit pending in state court continues to further their campaign to suppress Mr. Beaulieu's First Amendment rights to free speech and petition.

107.  As a direct result of the coordinated actions by the County Commission and the Individual Commissioners, acting both individually and in their official capacities under color of state law, and with Scroggins, Ellis, Mr. Beaulieu has suffered irreparable harm to his First Amendment rights to free speech and to petition the government. Mr. Beaulieu has also suffered significant harm, including emotional distress, mental anguish, sleep disturbances, increased stress, and reputational damage. Their concerted efforts have obstructed his ability to exercise his First Amendment rights without fear of retaliation, chilling his speech and his ability to petition the government.

**B.      Frank C. Ellis, Jr. (County Legal Counsel):**

108.  Attorney Frank 'Butch' Ellis ('Ellis'), acting both in his individual capacity and official capacity as the County's legal counsel, under color of state law, played a key role in the retaliatory actions against Mr. Beaulieu. At the request of multiple Commissioners, including Commissioner Allison, Ellis was directed to address Mr. Beaulieu's communications about

Airport issues. Commissioner Allison confirmed that she, along with other Commissioners, felt

they "had to take some action" against Mr. Beaulieu regarding his communications and requested

that the County's legal counsel, Ellis and Owens, intervene.

109. Ellis has admitted that the County, in coordination with the Individual

Commissioners and County Manager Scroggins, acting both individually and in their official

capacities under color of state law, requested that Mr. Beaulieu limit his communications to the

County's legal counsel (Ellis or Owens) or the County Manager, Scroggins. This directive was an

initial attempt by Ellis, Scroggins and the Individual Commissioners to shield the Commissioners

from Mr. Beaulieu's whistleblowing, restrict his lawful communications, and impede his ability

to present evidence of ongoing plane noise harm, harassment, and County misconduct. By

collaborating to block his efforts to address these issues of public concern, Ellis violated Mr.

Beaulieu's First Amendment right to free speech and petition the government (the Commission)

for redress. Mr. Beaulieu declined to comply, as he disagreed with the directive and did not trust

Scroggins to accurately convey his concerns, given Scroggins' stonewalling on Airport issues. He

believed that directly presenting his grievances was crucial to exercise his right to speak out and

petition about Airport misconduct, a matter of public concern.

110. Ellis then moved forward with drafting the Resolution to sue Mr. Beaulieu. Despite

Mr. Beaulieu's full compliance with the cease-and-desist letter signed and issued by Attorney J.

Bentley Owens under Ellis's direction, Ellis and the Commissioners conspired to pass the

Resolution anyway, falsely claiming that his communications had "continued and intensified"

when, in reality, they had ceased (Attachment "4"). This Resolution was presented to the

Commission pre-drafted, without any prior public discussion, suggesting a violation of the

Alabama Open Meetings Act and further revealing their conspiracy to silence Mr. Beaulieu for exercising his First Amendment rights.

111.  Ellis personally signed and filed the April 2, 2024, SLAPP-type lawsuit against Mr. Beaulieu nearly half a month after Mr. Beaulieu's full compliance with the cease-and-desist letter, once again falsely alleging continued communications to justify the legal action. To this day, neither the County, Scroggins, nor Ellis has retracted these misrepresentations, furthering their retaliatory, coordinated campaign against Mr. Beaulieu to silence and stop his whistleblowing.

112.  Ellis actively colluded with Grant, who sent numerous false and defamatory emails targeting Mr. Beaulieu and his counsel. Ellis was fully aware of these communications, which included false allegations of Mr. Beaulieu being a terrorist and security threat in emails to the TSA and FAA. Additionally, Ellis was directly copied on Grant's August 26, 2024, email to ALDOT, which falsely accused Mr. Beaulieu of engaging in 'legal harassment.' Given that Grant's prior email to BFC/Floyd was produced in the County's records, Ellis was also aware of this continued pattern of defamation. By knowingly participating in this coordinated effort to spread falsehoods and intimidate Mr. Beaulieu, Ellis, acting both individually and under color of state law, furthered the conspiracy to suppress Mr. Beaulieu's First Amendment rights.

113.  Additionally, Ellis, in both his individual and official capacities and under color of state law, was fully informed of retaliatory flyovers and disruptions caused by Airport tenants, including planes from flight schools, OTM, and CPC2/WaterWings. However, Ellis deliberately chose to take no action, thereby furthering the conspiracy and allowing the retaliatory campaign to continue unchecked. His intentional failure to intervene effectively suppressed Mr. Beaulieu's

First Amendment rights to free speech and petition.

114.  Ellis actively colluded with Franklin, Scroggins, Owens, and OTM by allowing tenants to conceal their identities through the disabling of ADS-B transmitters on aircraft used in retaliatory flyovers. By facilitating this concealment, Ellis, acting both individually and in his official capacities, contributed to the broader conspiracy aimed at punishing Mr. Beaulieu for exercising his First Amendment rights. This concealment prevented Mr. Beaulieu from identifying the planes causing direct and deliberate harm, particularly those operated by the County's tenants, thus obstructing his ability to petition the government for redress. Their inaction perpetuated the harm and sought to silence his speech and petitioning efforts.

115.  As a direct result of the coordinated actions by Ellis, acting both individually and in his official capacity under color of state law, Mr. Beaulieu has suffered irreparable harm to his First Amendment rights to free speech and to petition the government. Mr. Beaulieu has also suffered significant harm, including emotional distress, mental anguish, sleep disturbances, increased stress, and reputational damage. Their concerted efforts have obstructed his ability to exercise his First Amendment rights without fear of retaliation, chilling his speech and his ability to petition the government.

### C.     J. Bentley Owens, III (County Legal Counsel):

116.  Acting in his individual capacity and his official capacity as the County's legal counsel, and under color of state law, J. Bentley Owens ("Owens") reached an agreement or mutual understanding with other Defendants, including the Individual Commissioners, Ellis, and Scroggins, to retaliate against Mr. Beaulieu. Owens knowingly participated with the Commission and Ellis in drafting the cease-and-desist letter and issued it under his signature to Mr. Beaulieu

on March 18, 2024 (Attachment "3"). This letter was intended to silence Mr. Beaulieu for exercising his First Amendment rights to free speech and to petition the government. By issuing this letter at the direction of Ellis and the authorization of the Commission, Owens directly contributed to the suppression of Mr. Beaulieu's communications and the obstruction of his access to County officials, fully aware that these actions were unconstitutional.

117.  Additionally, Owens, acting in his individual and official capacities, and under color of state law, was informed of retaliatory flyovers and disruptions caused by Airport tenants, including planes from flight schools, OTM, and WaterWings, aimed at harassing Mr. Beaulieu. Despite this knowledge, Owens actively chose to take no action to address the ongoing harassment, thereby allowing the retaliatory campaign to continue unchecked in coordination with Ellis, Terry Franklin, and Airport tenants, particularly OTM and WaterWings. This deliberate collaborative failure to intervene further suppressed Mr. Beaulieu's First Amendment rights to free speech and petitioning the government concerning the Airport through retaliatory plane harassment.

118.  Owens actively colluded with County officials, including Franklin and Airport tenants like OTM, by allowing the disabling of ADS-B transmitters on aircraft used in retaliatory flyovers, thereby shielding them from identification. By facilitating this concealment, Owens, in his individual and official capacities, and under color of state law, contributed to the broader conspiracy aimed at punishing Mr. Beaulieu for exercising his First Amendment rights. This concealment obstructed Mr. Beaulieu's ability to gather evidence and seek redress, effectively suppressing his free speech and petition rights by preventing him from identifying those responsible for the targeted harassment from the County's Airport.

119.  As a direct result of Owens' actions, Mr. Beaulieu has suffered irreparable harm to his First Amendment rights to free speech and to petition the government. Mr. Beaulieu has also suffered significant harm, including emotional distress, mental anguish, sleep disturbances, increased stress, and damage to his reputation. The coordinated efforts between Owens, Ellis, the County Commission/the Individual Commissioners, Scroggins, and Airport tenants, including planes from OTM and WaterWings, have obstructed Mr. Beaulieu's ability to exercise his First Amendment speech and petition rights without fear of retaliation.

**D.    Chad Scroggins (County and Airport Manager):**

120.  Defendant Chad Scroggins ("Scroggins"), acting both in his individual capacity and his official capacity as County Manager and Airport Manager, reached an agreement or mutual understanding with other Defendants, including the County's legal counsel, Ellis, Owens, the Individual Commissioners, and Airport tenants, to retaliate against Mr. Beaulieu for exercising his First Amendment free speech and petitioning rights, acting under color of state law.

121.  In December 2023, Scroggins, along with Ellis, Owens, and the Individual Commissioners, acting under color of state law, issued a directive instructing that only he or the County's legal counsel would "receive and/or respond" to further communications from Mr. Beaulieu based on their content. This collusion effectively blocked Mr. Beaulieu's access to the County Commissioners, a scheme intended to silence him based on the content of his speech, impeding his ability to present evidence of plane harassment and other matters of public concern. This action was a violation of the Alabama Open Meetings Act, as it was implemented without public discussion and in furtherance of the conspiracy to suppress Mr. Beaulieu's lawful speech and petition rights.

122.  On March 18, 2024, a cease-and-desist letter signed by the County's legal counsel was issued to Mr. Beaulieu, directing him to cease all further communications regarding his complaints about the Airport. Given Scroggins' role as County Manager and his receipt of Mr. Beaulieu's communications, it can be reasonably inferred that he was intimately involved in this action as part of the broader retaliatory agreement. This letter was designed to suppress Mr. Beaulieu's speech, intimidate him, and prevent him from petitioning the government regarding the Airport's operations and related misconduct, violating his First Amendment rights (Attachment "3").

123.  Despite Mr. Beaulieu's full compliance with the cease-and-desist letter, Scroggins, acting in both his individual and official capacities and under color of state law, escalated the retaliation. On April 2, 2024, Scroggins signed the retaliatory SLAPP-type lawsuit complaint against Mr. Beaulieu falsely asserting under penalty of perjury that Mr. Beaulieu's free speech and petitioning actions had continued, intensified, and constituted harassment worthy of criminal prosecution, despite knowing they had ceased twelve days earlier. By acting in concert with Ellis to sign and file this false complaint, Scroggins took a deliberate step to further the conspiracy and suppress Mr. Beaulieu's First Amendment rights.

124.  The lawsuit, authorized by the County and the Individual Commissioners, falsely claimed that Mr. Beaulieu's communications had persisted and included baseless tort claims. Scroggins's involvement in filing these claims, despite knowing their falsity, and using financial coercion through specious allegations of financial harm to the Airport due to Mr. Beaulieu's speech and petitioning - classic SLAPP tactics - demonstrates his role in the broader conspiracy to suppress Mr. Beaulieu's speech, intimidate him, and deter others from speaking out against the

Airport's practices.

125.  Furthermore, Scroggins, acting in both his individual and official capacities and under color of state law, was aware of the ongoing retaliatory flyovers and noise disturbances conducted by Airport tenants, including OTM. Despite this knowledge, and in agreement with Ellis and Franklin, Scroggins failed to intervene, allowing these retaliatory actions to continue unchecked. This deliberate inaction was part of a coordinated effort to intimidate, punish, and silence Mr. Beaulieu, thereby suppressing his First Amendment rights to free speech and petition.

126.  By participating in the issuance of the cease-and-desist letter, signing and swearing to the truth of the false statements in the retaliatory lawsuit, and refusing to stop the retaliatory flyovers, Scroggins, under color of state law, furthered the conspiracy with the County/the Individual Commissioners and the County's legal counsel to punish Mr. Beaulieu for his speech and petitioning activities. His actions, both individually and as a County official, created a nexus that transformed private conduct into state action, directly resulting in the violation of Mr. Beaulieu's First Amendment rights.

127.  As a direct result of Scroggins' actions, Mr. Beaulieu has suffered irreparable harm to his First Amendment rights to free speech and to petition the government. Mr. Beaulieu has also suffered significant harm, including emotional distress, mental anguish, sleep disturbances, increased stress, and damage to his reputation. The coordinated efforts between Scroggins, Ellis, Owens, the County Commission/the Individual Commissioners, Franklin, and Airport tenants, including planes from OTM, have obstructed Mr. Beaulieu's ability to exercise his First Amendment speech and petition rights without fear of retaliation.

### E.    **Terry Franklin (County Airport Manager):**

128. Terry Franklin ('Franklin'), acting in both his individual and official capacities as Airport Manager, reached an agreement or mutual understanding with other Defendants - including the County's legal counsel (Ellis and/or Owens), "'numerous commissioners," and Airport tenants (including OTM) - to retaliate against Mr. Beaulieu for exercising his First Amendment speech and petitioning rights, all while acting under color of state law.

129. Franklin, the onsite Airport Manager, maintains a close-knit relationship with Airport tenants and users, including the OTM flight school, which has an office in the Airport building. Following Mr. Beaulieu's complaints about plane noise, Airport tenants - including flight schools, private pilots, and other users - engaged in retaliatory conduct, such as deliberate flyovers, flybys, and targeted airplane noise directed at Mr. Beaulieu and his property. Mr. Beaulieu notified the County, its officials, and Franklin of this conduct, seeking redress. Despite being fully aware of the ongoing retaliatory flyovers and disruptive actions by tenants such as OTM/Slipstream, WaterWings/CPC2, Grant, and others, Franklin, in coordination with other Defendants, took no action to stop these practices. This deliberate inaction, under color of state law, facilitated the targeted harassment of Mr. Beaulieu and directly contributed to the suppression of his First Amendment rights.

130. Franklin has been, and continues to be, aware that certain pilots, particularly those operating from OTM, are disabling ADS-B transmitters to avoid tracking during retaliatory flyovers and flybys. By allowing this conduct, Franklin, in his individual and official capacities, colluded with these individuals, effectively extending the County's authority to shield their retaliatory actions. This failure to intervene has created a nexus, transforming these private actions into state action, thereby implicating the County in the violation of Mr. Beaulieu's

constitutional rights. As of October 4, 2024, while this complaint is being finalized, OTM's

planes N4473X and N5366J continue to operate with their ADS-B transmitters off, with the

knowledge of Airport management (Franklin) and OTM/Franks/Slipstream.

131.    Acting in both his individual capacity and official capacity as Airport Manager, and

under color of state law, Franklin colluded with Robert Scott Grant and Greg Floyd/BFC to

frame Mr. Beaulieu with false claims of criminal harassment. Franklin was aware of Grant's and

BFC's retaliatory flight operations and false accusations, including the March 14-15, 2024, email

string between BFC/Floyd and Grant that falsely portrayed Mr. Beaulieu's communications as

criminal harassment (Attachment "5"). Despite this knowledge, Franklin took no steps to

intervene. It can be reasonably inferred that Franklin forwarded this email to Ellis or Owens, as it

later appeared in the County's public records production, demonstrating his active participation in

the conspiracy to facilitate further retaliatory legal actions and support the wrongful pursuit of

criminal charges against Mr. Beaulieu.

132.    Franklin, acting both individually and in his official capacity under color of state

law, deliberately failed to fulfill his duties as Airport Manager by refusing to address the

retaliatory conduct of Airport tenants, including OTM and WaterWings. Despite having the

authority and responsibility to regulate airport operations, enforce lease agreements, and manage

tenant conduct, Franklin actively allowed these tenants to engage in targeted flyovers, noise

disturbances, and other forms of harassment against Mr. Beaulieu. His inaction was not due to

negligence but was part of a coordinated effort to retaliate against Mr. Beaulieu's exercise of his

First Amendment rights. By conspiring with the County, Individual Commissioners, County's

legal counsel, Robert Scott Grant, Floyd, BFC, and others, Franklin transformed what could have

been private retaliatory actions into state-sanctioned conduct, thereby directly violating Mr. Beaulieu's rights to free speech and to petition the government.

133.  As a direct result of Scroggins' actions, Mr. Beaulieu has suffered irreparable harm to his First Amendment rights to free speech and to petition the government. Mr. Beaulieu has also suffered significant harm, including emotional distress, mental anguish, sleep disturbances, increased stress, and damage to his reputation. The coordinated efforts between Franklin, Ellis, Owens, Grant, and Airport tenants, including planes from OTM and WaterWings, have obstructed Mr. Beaulieu's ability to exercise his First Amendment speech and petition rights without fear of retaliation.

## F.    <u>Robert Scott Grant, Shelby County Aviation Association, Inc.:</u>

134.  Defendant, Robert Scott Grant (Grant), acting in his individual capacity, as President of the Shelby County Aviation Association (SCAA) and acting in concert with the County's legal team, and under color of state law, reached an agreement or mutual understanding with County officials, including Franklin, the County's legal counsel (Ellis and Owens), and Airport tenants to retaliate against Mr. Beaulieu for exercising his First Amendment rights to free speech and to petition the government concerning increasing noise from operations from the Airport.

135.  On March 5, 2024, in concert with County officials, including Franklin, and the County's legal team, Grant sent false reports to the FAA and TSA, maliciously portraying Mr. Beaulieu, his counsel, and his elderly mother, as security threats to the Airport (Attachment "1"). These baseless accusations were not just defamatory; they raised the specter of federal investigation and potential legal consequences, amplifying the threat to Mr. Beaulieu's free

speech and petition rights. The email, which surfaced in August 2024 in requested public records from the County, reflected a formal and serious decision to retaliate against Mr. Beaulieu and indicates that Grant was acting with the knowledge and in support of, and in concert with, the County's legal team and Airport management.

136.  Grant's provision of false information, subsequently utilized or endorsed by the County, demonstrates an agreement between him, the County's legal counsel, and Franklin to suppress Mr. Beaulieu's First Amendment rights under color of state law. Franklin, the onsite manager, knowing the accusations were false, triggered a TSA investigation and security flags with the federal agency without correcting the misinformation, implicitly approving the conspiracy to silence Mr. Beaulieu. Grant's actions in furtherance of this conspiracy included misusing his position as SCAA President, falsely signing emails as "U.S.A.F. Retired Colonel" to convey greater authority to federal and state agencies, and coordinating with the County's legal team. These actions, taken under color of state law, directly furthered the retaliation against Mr. Beaulieu.

137.  On March 14-15, 2024, Grant, acting in concert with Greg Floyd, Director of Operations at Birmingham Flight Center (BFC), forwarded false claims to Airport Manager Terry Franklin, falsely alleging that Mr. Beaulieu was engaging in criminal harassment (Attachment "2"). Franklin, acting in his official capacity as Airport Manager, failed to address these false accusations, thereby allowing the conspiracy to continue unchecked. Grant, Floyd, and Franklin coordinated to use these false claims to justify further retaliatory actions, including the County's issuance of the cease-and-desist letter and the filing of the SLAPP-type lawsuit against Mr. Beaulieu. These concerted efforts demonstrate a clear conspiracy between private actors (Grant

and Floyd) and state actors (Franklin and the County) to punish Mr. Beaulieu and suppress his legitimate complaints about the Airport's operations. By integrating Grant's false claims into official County actions, Grant, the County/the County Commissioners, the County's legal counsel, Franklin, and Scroggins, collectively acted under color of state law to violate Mr. Beaulieu's constitutional rights.

138.  In July 2024, Grant escalated his retaliatory efforts by filing a bar complaint against Mr. Beaulieu's counsel. This complaint included false and malicious statements about both the undersigned counsel and Mr. Beaulieu. Notably, it contained specific details from Mr. Beaulieu's prior cases that mirrored information used in County filings, strongly suggesting that Grant acted with knowledge and assistance from County attorneys. This coordinated effort further implicates the County's legal team in Grant's ongoing retaliatory campaign. The apparent intent was to deprive Mr. Beaulieu of legal representation, thereby undermining his ability to pursue his claims and exercise his First Amendment rights. This coordinated effort aimed to deprive Mr. Beaulieu of legal representation, undermining his ability to pursue his claims and exercise his First Amendment rights. This action, taken while the County's lawsuit was pending remand from federal court, marked a significant action in the conspiracy to silence Mr. Beaulieu by attacking his access to justice and his constitutionally protected speech through his counsel.

139.  On July 25, 2024, Grant, acting in his capacity as President of the SCAA, sent a mass email to the SCAA subscriber list soliciting information specifically targeting Mr. Beaulieu. This email, which later surfaced in the County's public records, demonstrates Grant's ongoing participation in the County's retaliatory efforts against Mr. Beaulieu for exercising his First Amendment rights. The attempt to gather evidence and mobilize opposition was intended to

create a hostile environment and intimidate Mr. Beaulieu, deterring him from further complaints and lawful petitioning. This action by Grant, in collusion with the County and its legal team, further exemplifies the conspiracy to suppress Mr. Beaulieu's free speech and petition rights in violation of 42 U.S.C. § 1983.

140.  Notably, Grant included as an attachment to his bar complaint the undersigned counsel's legitimate notice of intent to sue the "Flying Schnauzer, LLC"  plane owner and its incorporator for retaliatory flights - an activity that continues, as evidenced by another flyby before 8:00 A.M. on Sunday, October 6, 2024, deliberately disturbing the residential area. Grant's misuse of this letter, along with his coordinated use of the SCAA mail-out, reveals collusion with other airport tenants and strongly suggests that Grant acted with knowledge and direct assistance from the County/the County's legal team to suppress Mr. Beaulieu's and his counsel's protected activities.

141.  On August 26, 2024, Grant sent an email to ALDOT, falsely claiming that Mr. Beaulieu and his counsel were engaging in legal harassment and causing financial harm to the Airport (Attachment "5"). This email was explicitly copied to County Attorney Ellis, who again took no action to correct the false portrayal of Mr. Beaulieu. By copying the County's legal counsel, Grant reinforced his coordination with the County's legal team, taking actions under color of state law.

142.  This email came to light following a public records request sent by the undersigned counsel to ALDOT on August 8, 2024. ALDOT's response on September 4, 2024, included Grant's August 26 email, sent both individually and as President of the SCAA. In this communication, Grant falsely accused Mr. Beaulieu and his counsel of engaging in a "campaign"

of "legal harassment" and made numerous additional baseless allegations. Crucially, Grant stated

that he and the SCAA were "supporting and participating with the legal team in Shelby County,"

explicitly linking his actions to the County's ongoing retaliatory campaign.

143. The timing and content of this email suggest it was a strategic move, under color of

state law, and orchestrated as part of the County's broader plan to suppress Mr. Beaulieu's speech

and petition rights. By forwarding this email to the County's legal counsel (Ellis), Grant solidified

the direct connection between his actions and the County's retaliatory scheme to silence Mr.

Beaulieu in violation of his First Amendment rights to free speech and petition the government.

144. Throughout these incidents, Grant, in concert with County officials, Airport tenants,

and other entities, falsely characterized Mr. Beaulieu's legitimate complaints as harassment. By

engaging in these actions with the knowledge and tacit approval of the County, Grant's conduct

became state action. The County's failure to intervene provided Grant with state authority to

carry out his retaliatory campaign, establishing the necessary nexus under color of state law.

145. Despite Grant's subsequent "withdrawal" of his false reports to the FAA and TSA

in September 2024 after a demand for retraction by the undersigned counsel, and his

"withdrawal" of the bar complaint on October 1, 2024, after the Bar's decision to take no action,

the damage was already done. These withdrawals only serve to confirm the baseless and

malicious nature of his accusations, further reinforcing that they were part of a coordinated

conspiracy with the County and its legal counsel to defame and silence Mr. Beaulieu and his

counsel through false and retaliatory tactics.

146. Grant also actively participated in retaliatory flyovers over Mr. Beaulieu's property,

including direct flyovers not only on  March 2, 2024, but also on April 7, 2024. These actions

were coordinated, either expressly or implicitly, with Airport Manager Terry Franklin, the County's legal counsel, and flight school operators (OTM, Slipstream, WaterWings, CPC2, and their pilots). The flyovers were designed to intimidate Mr. Beaulieu and punish him for exercising his First Amendment rights, further reinforcing the conspiracy to suppress his speech and petitioning activities.

147.  As a direct result of Grant's conspiratorial actions, undertaken in his individual capacity, as President of the SCAA, and in concert with the County's legal team, Mr. Beaulieu has suffered irreparable harm to his First Amendment rights to free speech and to petition the government. Mr. Beaulieu has also suffered significant harm, including violations of his First Amendment rights, emotional distress, mental anguish, sleep disturbances, and damage to his reputation. These actions, coordinated with other Defendants, have contributed to the ongoing suppression of Mr. Beaulieu's constitutional rights and obstructed his ability to seek redress without fear of retaliation.

### G.     Charles Edward Poskey and American Drilling of Alabama, Inc.:

148.  Mr. Beaulieu raised concerns about noise and lease violations involving the County's airport tenants, including Attorney Ellis, as part of his efforts to address the public harm caused by Airport operations.

149.  Defendant Charles Edward Poskey ("Poskey"), individually and as the owner and incorporator of American Drilling of Alabama Inc. ("American Drilling"), participated in the retaliatory campaign to suppress Mr. Beaulieu's First Amendment rights. Poskey and American Drilling acted under color of state law through their actions and coordination with County officials, including Ellis, the Shelby County Aviation Association ("SCAA"), and Robert Scott

Grant ("Grant"), who acted in concert with the County's legal team.

150.   Poskey/American Drilling regularly hosted SCAA meetings and events in their hangar on County property, in violation of their lease, which only permitted airplane storage. Despite these restrictions, the County allowed the SCAA to use the hangar for gatherings, facilitating a misuse of public property beyond its intended purpose. This collusion with the County illustrates Poskey's influence over Airport activities and participation in the scheme to retaliate against Mr. Beaulieu. Additionally, Poskey stated that County officials conducted undisclosed meetings in the hangar to discuss Airport-related plans. These secretive meetings reveal a close relationship between Poskey and County authorities, including the Commission and the County's legal counsel, further implicating him in the conspiracy to suppress Mr. Beaulieu's speech.

151.   Poskey/American Drilling played a key role in issuing the cease-and-desist order against Mr. Beaulieu. On March 14, 2024, they hosted an event in the hangar for SCAA members. Mr. Beaulieu notified the County of his concerns that the event violated lease terms and was intended as a forum to retaliate against him for his noise/Airport complaints. The undersigned counsel communicated these concerns directly to Poskey/American Drilling.

152.   When Mr. Beaulieu and his counsel visited the Airport parking lot to observe the event, Poskey confronted them in an agitated manner. During the conversation, he explicitly stated his intent to contact County Attorney Ellis to "get a cease-and-desist" against Mr. Beaulieu, demonstrating his coordination with the County's legal counsel. Four days later, the County issued the cease-and-desist letter to Mr. Beaulieu, whose breadth extended beyond County officials to include Airport tenants like Poskey, American Drilling, the SCAA, and Grant.

This indicates a coordinated effort to suppress Mr. Beaulieu's First Amendment rights by silencing his complaints about tenant activities that harmed him and the community (Attachment "3").

153.  On March 22, 2024, just one day after Mr. Beaulieu received the cease-and-desist letter, Poskey's plane, N63895, was flown directly over Mr. Beaulieu's home. This action, along with other harassing plane conduct by Poskey/American Drilling planes, illustrates their ongoing role in the retaliatory campaign.

154.  The cease-and-desist order extended beyond County officials to Airport tenants, including Poskey, American Drilling, the SCAA, and Grant. This indicates a coordinated effort between the County, Poskey/American Drilling, the SCAA, and Grant to suppress Mr. Beaulieu's First Amendment rights. The order aimed to silence his complaints about tenant activities that harmed him and the community. On March 22, 2024, just one day after Mr. Beaulieu received the cease-and-desist letter, Poskey's plane, N63895, was flown directly over Mr. Beaulieu's home. This action, along with other harassing flybys by Poskey/American Drilling planes, illustrates their ongoing role in the retaliatory campaign.

155.  Through their actions, taken under color of state law in concert with County officials, Poskey and American Drilling contributed to the broader conspiracy aimed at punishing Mr. Beaulieu for exercising his First Amendment rights to free speech and to petition the government. As a result, Mr. Beaulieu has suffered irreparable harm to his constitutional rights, as well as emotional distress, reputational damage, and an impediment to his ability to advocate on matters of public concern.

**Prayer for Relief**

Page 76 of  81

WHEREFORE, Plaintiff, Henri Beaulieu, respectfully requests that this Court grant the following relief:

A.  Enter a declaratory judgment that Defendants' actions violated Plaintiff's free speech and petitioning rights under the First Amendment;

B.  Enter a declaratory judgment that Defendants conspired to violate Plaintiff's free speech and petitioning rights under the First Amendment;

C.  Issue a preliminary and permanent injunction to include the following:

i)  Prohibit Defendants from engaging in any further retaliatory actions, including initiating SLAPP-type lawsuits and other acts aimed at suppressing Mr. Beaulieu's free speech and petition rights;

ii)  Prohibit all retaliatory flight operations pending further order of this Court to prevent ongoing harassment of Mr. Beaulieu and require the County to take all such actions to effectuate the same;

iii)  Specifically prohibit the conducting or permitting of retaliatory flyovers, veer-overs, flybys, or other plane operations intended to harass, intimidate, retaliate against Mr. Beaulieu;

iv)  Require all aircraft operating out of the Shelby County Airport to keep their ADS-B transmitters on at all times during flight operations to ensure transparency and accountability, and to prevent any attempts to avoid detection during retaliatory plane conduct pending a final order;

v)  Otherwise cease all retaliatory flight operations pending further order of this Court to prevent ongoing harassment of Mr. Beaulieu;

D.  Restore Mr. Beaulieu's ability to exercise his First Amendment free speech and petition rights without interference from the Defendants;

E.  Award Plaintiff nominal, compensatory, and punitive damages against Defendants in their individual capacities, jointly and severally, including damages for emotional distress, mental anguish, reputational harm, that has resulted from the chilling effect on Plaintiff's speech and petition activities;

F.  Award Plaintiff reasonable attorney's fees, costs, and expenses incurred in this action pursuant to 42 U.S.C. § 1988 and other applicable laws;

G.  Award prejudgment interest on all sums awarded to Plaintiff;

H.  Order the expungement of any adverse records or references, including those related to the TSA or other agencies, stemming from Defendants' retaliatory conduct, including actions by Robert Scott Grant and the Shelby County Aviation Association, which affect Mr. Beaulieu and his family members;

I.  Refer Defendant Robert Scott Grant to the Department of Justice for investigation into his false statements to the TSA and FAA with regard to the Plaintiff, the undersigned counsel, Plaintiff's mother, and any other members of Mr. Beaulieu's family;

J.  Grant any additional equitable or declaratory relief necessary to fully remedy the harms caused by Defendants' unlawful actions; and

K.  Grant such other and further relief as the Court deems just, proper, and necessary.

Respectfully Submitted,

 /s/ Separate signature page attached
**HENRI N. BEAULIEU, JR.**

**STATE OF ALABAMA     )**
**SHELBY COUNTY          )**

Before me, the undersigned, a Notary Public in and for said County and State, personally appeared **HENRI N. BEAULIEU, JR.** who is known to me and after being first duly sworn by me,

deposes and declares under penalty of perjury that the foregoing is true and correct to the best of his knowledge and belief.

Given under my hand and seal this the 6th day of October, 2024.

/s/ Separate signature page attached
Notary Public

**Jury Demand**

Plaintiff demands a trial by struck jury on all issues triable to a struck jury in this case.

/s/Donna J. Beaulieu
Counsel for Plaintiff

Respectfully submitted,

Donna J. Beaulieu
Attorney for Plaintiff

By: /s/Donna J. Beaulieu
    Donna J. Beaulieu (BEA042)
    P.O. Box 88
    Pelham, AL 35124
    Tel.: 205-773-9688
    Email: donnabeaulieu@gmail.com;

Defendants to be Served:
Shelby County, Alabama
c/o the Shelby County Commission
Shelby County Administration Building
200 West College St. Rm 123
Columbiana, AL 35051

Shelby County Commission
Shelby County Administration Building
200 West College St. Rm 123
Columbiana, AL 35051

Kevin Morris
105 Farmstead Road
Wilsonville, AL 35186

Tommy Edwards
35 Dogwood Drive
Calera, AL 35040

Jon Parker
840 Highway 54
Montevallo, AL 35115

Ward Williams
225 Summerbrook Lane
Alabaster, AL 35007

Elwyn Bearden
3490 Bearden Lane
Helena, AL 35080

Jeff Brumlow
404 Rockport Rd
Birmingham, AL 35242

Lindsey Allison
454 Valley View Drive
Indian Springs, AL 35124

Rick Shepherd
500 Mimosa Road
Leeds, AL 35094

Robbie Hayes
P.O. Box 376
Chelsea, AL 35043

Frank C. Ellis, Jr., Esq.
Ellis Head Owens Justice
P.O. Box 587
Columbiana, AL 35051

J. Bentley Owens, III, Esq.
Ellis Head Owens Justice
P.O. Box 587
Columbiana, AL 35051

Chad Scroggins
101 Connemara Trail

Birmingham, AL 35242

Terry Franklin
209 Beasley Road
Gardendale, AL 35071

Shelby County Aviation Association, Inc.
Shelby County Airport
265 Weathervane Road
Calera, AL 35040

Robert Scott Grant
2705 Royal Lane
Pelham, AL 35124

Charles Edward Poskey
818 Highway 42
Calera, AL 35040

American Drilling of Alabama, Inc.
c/o Charles Edward Poskey
535 U.S. Highway 31 South
Alabaster, AL 35137

Birmingham Flight Center, LLC
4243 E. Lake Blvd.
Birmingham, AL 35217

Mr. Greg Floyd
3535 Mary Taylor Road
Apt. 1210
Birmingham, AL 35235